## THOMAS SHINN v. UNITED RAILWAYS COMPANY, Appellant.

### Division One, February 28, 1913.

1. **INSTRUCTION: Challenge in Motion: Clerical Mistake.** A mere clerical mistake is not fatal. Where the motion for a new trial by mere clerical mistake challenged instruction numbered three instead of instruction numbered eight, the objection to number eight will be considered on appeal.

2. **APPEAL: Reversal: Immaterial Error.** Courts will not reverse a judgment on every error whatsoever. There is a wide difference between conceivable error and reversible error. Reversible error excludes the consideration of any error or defect not affecting the substantial rights of the complaining party.

3. ————: ————: ————: **In Instruction.** Where the appellate court is satisfied that an instruction, although open to criticism for looseness of language and generality of terms, has done no harm, and the verdict is manifestly right and it is apparent a different result could not have been reached without injustice, the judgment will not be reversed.

Shinn v. Railroad.

4. ——: ——: ——: ——: Measure of Damages.
Where defendant's position on appeal is that it is not liable
at all for plaintiff's injuries, and there is no dispute as to the
amount of the damages and no complaint of an excessive
verdict, the judgment in an amount abundantly supported by
the evidence will not be reversed on the ground that plaintiff's
instruction on the measure of damages did not limit the amount
he could recover for injury to his clothes, his outlay for medical
attendance and his loss of wages, but, mentioning all these
things, limited the amount to the aggregate named in the
petition.

Appeal from St. Louis City Circuit Court.—*Hon.
Virgil Rule,* Judge.

AFFIRMED.

*Boyle & Priest, Morton Jourdan, T. E. Francis*
and *Robert E. Moloney* for appellant.

*Johnson, Houts, Marlatt & Hawes, John T. Fitz-
simmons,* and *Blevins & Jamison* for respondents.

Respondents' instruction on the measure of dam-
ages was correct, both in form and substance. If the
appellant thought the instruction was too general and
left the jury too much latitude, it should have asked
more specific instructions. Having failed to do so, it
cannot now complain. Browning v. Railroad 124 Mo.
71; Geismann v. Mo. Edison Elec. Co., 173 Mo. 679;
Wheeler v. Bowles, 163 Mo. 398; Waddell v. Railroad,
213 Mo. 18; Norris v. Railroad, 239 Mo. 717; Robert-
son v. Railroad, 152 Mo. 393; Wahl v. Transit Co., 203
Mo. 276; Bank v. Ragland, 171 Mo. 186; Duffy v. Tran-
sit Co., 104 Mo. App. 235; Smelting Co. v. Parry,
166 Fed. 407; Railroad v. Maloney, 136 Fed. 171; 38
Cyc. 1693.

LAMM, J.—Charging that while he was boarding
defendant's stationary street car to become a passen-
ger, at a usual place for receiving passengers, the car

was negligently started with a jerk before he could reach a place of safety, that by said negligent jerk and start he was violently thrown to the street, sustaining severe injuries in his arms, that his hat and clothes (worth $40) were ruined, that from said injuries he suffered pain of body and mind, was disabled from his vocation for two months, losing $156 in wages, incurred medical expenses of $30 and was damaged $500 in the aggregate, plaintiff sued in a justice court in St. Louis for said damages.

From a verdict and judgment in plaintiff's favor, defendant appealed to the circuit court. From another there, defendant appealed to the St. Louis Court of Appeals. In that court plaintiff's judgment was reversed and his cause remanded—one of the judges dissenting. [Shinn v. Railroad, 146 Mo. App. 718.] On that dissent the case was certified here.

The question put to us by appellant is single, to-wit: Was the giving of plaintiff's instruction (presently set forth) on the measure of damages reversible error?

But before reaching and deciding that question the record is to be reckoned with—a survey of which is like an account of stock, debts and credits to a merchant, a calculation of latitude and longitude to a mariner. This is so because:

The facts of a case may be material in determining whether a given instruction is so bad as to constitute reversible error on appeal. In this view of it, fetching a small compass on the facts is not amiss, thus:

Plaintiff put in testimony tending to show that he was in the act of boarding a car at a usual stopping place to become a passenger, that by one hand he got hold of a hand-rail at the entrance of a stationary car, and put one foot in place on the step, that while resting on that foot as a bearing, he was about putting his other in place, that while in such ticklish fix (we say *ticklish,*

having in mind the law of physics that to maintain one's equilibrium, the line of direction from his center of gravity should usually fall within his base) the car started with a jerk, over-balanced him and, throwing him to the street, badly injured him, smashing his derby and tearing and ripping up his coat and breeches. *Contra,* defendant's testimony tended to show that plaintiff (who seems to have been a fat man, weighing over sixteen English stone) negligently ran to, caught hold of and tried to enter, a going car, already overcrowded, and, in trying to accomplish that negligent feat, was cast to the street by the car's ordinary motion. The record shows that such was the bone of contention at the trial in the circuit court on the issue of liability or nonliability. The issue of fact thus raised was found against defendant on substantial evidence and on proper instructions. Defendant does not seek to disturb the verdict on appeal on the theory it is not supported by the testimony. We must assume, then, that the liability of defendant for damages in *some* amount is not an open question.

Attend to another phase of the case, viz., the *quantum* of damages. Plaintiff's testimony tended to show that his coat, trousers and hat, of **Damages: Quantum.** the value of $38.50, were ruined and lost to him; that he paid for necessary medical services a reasonable sum, to-wit, $30; that he lost through disablement at least eight weeks' wages at $18 per week, amounting to $144. These items of actual and undisputed loss aggregate $212.50. As said heretofore, the record shows the defense below hung on one lone thread—viz., *non-liability.* Accordingly, as just indicated, the record also shows that defendant made no attempt to either deny or mitigate the amount of plaintiff's said loss in wages and property. If at the trial it cared a snap of the fingers one way or the other about the amount, its solicitude is not disclosed by proofs, by offers of proof, or by any other

position, *nisi*, taken by its able counsel. So, defendant made no attempt to controvert plaintiff's other testimony, presently canvassed, tending to show the extent and character of the injuries to his person. His injuries were these (we copy a bit from the testimony of his physician) : "The contusion and laceration of the right elbow, some spraining of the joints, and a bad sprain of the left wrist, with dislocation of the smaller bones of the upper row of the carpus." It was necessary for his doctor to reduce the dislocations and for three or four weeks (daily as we read it) cleanse and dress his wounds and to tend his sprains until cured.

There is no pretence indulged that his injuries and sufferings were magnified or were otherwise than as indicated by the above undisputed proof. The position of defendant at the trial was not that plaintiff's wounds, hurts and plains were non-existent, or the simulation of a malingerer. Its position as to this element of damages was the same it was anent plaintiff's property loss, viz., non-liability. As accentuating that frank and blunt position, defendant put in no ground in its motion for a new trial that the verdict was excessive. We stress the omission of that complaint.

The case must proceed on appeal, then, on the theory the verdict is not excessive, and on the further theory that the liability or non-liability of defendant for *all* of plaintiff's resulting damages was threshed out below and on substantial proof settled against defendant.

It is on such record we are called on to say whether or no the giving of plaintiff's instruction on the measure of damages was reversible error. That instruction, numbered "8" by the court, is to-wit:

"The court instructs you, gentlemen of the jury, that if you find for the plaintiff, you should, in estimat-

Shinn v. Railroad.

**Instruction:
Measure of
Damages.**

ing his damages, consider his physical condition before and after receiving the injuries for which he sues as shown by the evidence, the physical pain and mental anguish, if any, suffered by him on account of his injuries at the time of and since such injuries, as shown by the evidence to have been caused by the injuries then and there received; the extent, if any, to which he has been prevented and disabled by reason of such injur-. ies from working and earning a livelihood for himself at his regular employment as a bartender: his necessary expenses for medical attention in endeavoring to be cured; his loss by reason of damage, if any, to his wearing apparel, as a result of the falling or being thrown from defendant's car; and you may find for him such sum, as in the judgment of the jury, under all the evidence in the case, will compensate him for the injuries then and there received, if any, wages or earnings lost, necessary expenses incurred, and damage to wearing apparel suffered, not, however, exceeding the sum of five hundred dollars.''

To that instruction defendant excepted; but asked none of its own on the measure of damages.

It will be observed (and herein its vice is said to lurk) that the instruction placed no dollar limit on the items of special damages pleaded in the complaint, viz.: $40 for clothes, $30 for medical expenses, $156 in wages; but did limit the outside boundary of the aggregate recoverable damages to $500, the gross sum demanded in the complaint. The jury returned a general verdict, thus:

''We the jury in the above cause find in favor of the plaintiff on the issues herein joined, and assess his damages at the sum of two hundred and fifty ($250.00) dollars.''

So much for the vital record.

I.  Respondent makes the point that instruction number eight, the one questioned, was not challenged in the motion for a new trial, hence is not **Clerical Error in Motion.** here for review. Let us look to that. It appears in the record as one of a series covering all on both sides and bears the serial number "8." Defendant's motion for a new trial struck at plaintiff's instructions, described in the motion as "one, two and three." Respondent argues that on such record there is no instruction "No. 3" given for plaintiff—that, *contra*, instruction "No. 3" was given for defendant. Hence, he says, the only challenge in said motion is either to an *imaginary* instruction number three, or to one of defendant's own, and none at all to number eight. The facts are that, in the court's series, "No. 8" was the *third* and last of plaintiff's given instructions, that "No. 3" was given for *defendant*, but that plaintiff only asked and got three. It thus appears that the challenge in the motion was to as many as plaintiff got, but used the wrong serial number in one instance. So, it is of significance that the bill of exceptions shows, as already pointed out, that defendant excepted to "No. 8." Admitting that words of description may, when reason calls for it, become material, yet in the condition of things we are dealing with it is too plain for argument that the motion for new trial by clerical mistake read "three" instead of "eight." It is good doctrine that a mere clerical mistake is not fatal. [Cassidy v. St. Joseph, 247 Mo. 197.] To make such a pen-slip a fatal slip on appeal would be to let a mere pin-prick of inadvertence hide the very right of the matter even as the cloud the Hebrew prophet saw, on the rim of the horizon, of the size of a man's hand, spread presently and shut out the sky. That the law regards not trifles, is one of its favorite maxims. It is written (we construe the writing liberally) that those who allow themselves to strain at gnats are prone (if they don't look out) to get in the

class of those whose powers of deglutition may encompass the swallowing of camels. We invoke for that theory the wise hint of a venerated document well known to the whole bar of Missouri (*q. v.*). So Horace holds up a red danger signal in his *Ars Poetica* of some value in dispensing justice through judicial exposition, viz.: *Parturiunt montes, nascetur ridiculus mus.*

We rule the point against respondent.

## II.   *Of the instruction.*

We are of opinion it was well enough on this record. This, because:

Respect is the very tap root of all true fealty and obedience. Now, no system of laws could for one minute command a whit of respect that would add to the delays of the law (five years in this case) the intolerable burden of reversing judgments on every error whatsoever.

On this head I may be allowed to illustrate by an edict of the Second Emperor of the last Chinese ruling dynasty, to point a moral. Pan Hui Lo, in "A Study of Chinese Jurisprudence" (6 Ill. Law Rev., p. 533), vouches for such edict, viz.:

"The Emperor, considering the immense population of the Empire, and the great division of the territorial property and the notoriously law-loving character of the Chinese, is of opinion that lawsuits would tend to increase to a frightful amount, if the people were not afraid of the tribunals, and if they felt confident of always finding in them ready and perfect justice. A man is apt to delude himself concerning his own interests; contests would then be interminable, and the half of the Empire would not suffice to settle the lawsuits of the other half. I desire, therefore, that those who have recourse to the tribunals should be treated without any pity, and in such manner that they should be disgusted with law, and tremble to appear

before the magistrates. In this manner the evil will
be cut up by the roots; the good subjects, who have
difficulties among themselves, will settle them like
brothers by referring to the arbitration of the old men
and gentry of the commune. As for those who are
troublesome, obstinate and quarrelsome, let them be
ruined in the law courts—that is the justice that is due
to them.''

The abhorrent office of a Chinese judge, brutally
suggested in the reasoning of the edict, is not the
judge's office among a free people, whose laws are to
be so administered as to win the respect of the good
citizen for the laws, and whose courts so rule in dis-
pensing justice as to be worthy the esteem of just men.

But we have been led a little afield. Getting back
to the trend of our discourse, imperfections and errors
are inherent in every phase of human endeavor. Ideal
and absolute perfection is an iridescent dream of a
dreamer—a vision of Utopia—out of court, as in. Ac-
cordingly on appeal the question is not: Was there
any error below? It is: Was there reversible error?
It matters little whether an appellate court goes to the
written law for the distinction between mere error on
one hand and reversible error on the other, or goes
there for its duty to draw and apply that
distinction, as the majority of this Division
held in Trainer v. Mining Company, 243
Mo. l. c. 371, or whether it goes to its inherent power to
act sensibly, independent of any statute, as my es-
teemed brother GRAVES insisted in the same case, l. c.
374, *et seq.* This is so because the source of the power
is immaterial, the existence of it and the duty to exer-
cise it are the worthy parts, the principal thing. Un-
der the statutes (or in the very nature of things, re-
gardless of statute) reversible error is bound to be
error materially affecting the merits of the action—
this, too, in the *belief* of the reviewing court. [R. S.
1909, sec. 2082.] Reversible error excludes the con-

*Reversible Error.*

sideration of any error or defect not affecting the substantial rights of the complaining party. [R. S. 1909, sec. 1850.]

The prophylactic rules thus announced apply as well to instructions as to other defects or lapses in the history of the incidents of a lawsuit. So that the right doctrine steadily announced is that where it is obvious in a given case that an instruction has done no harm, where we do not "believe" it has done harm, where the verdict is manifestly right and it is apparent that a different result could not have been reached without injustice, a reversal is denied, although such instruction is open to criticism for looseness in language or generality of terms.

[Petersen v. Transit Company, 199 Mo. l. c. 344; Noble v. Blount, 77 Mo. l. c. 239; Haehl v. Railroad, 119 Mo. l. c. 344; Fox v. Windes, 127 Mo. l. c. 514; Macfarland v. Heim, 127 Mo. l. c. 335; Sherwood v. Railroad, 132 Mo. 339; Schuepbach v. Gas Co., 232 Mo. l. c. 612.]

In the foregoing view of it, the verdict and judgment in this case must stand. We will not speculate on what the jury *might* do, or airily conjecture this or that. We stand on the proposition that the jury are presumed, absent anything to the contrary appearing, to obey their oaths and bring in a verdict according to the evidence. Being men of sense and acting under an oath freshly taken, they are entitled to that presumption. Assuming (which was true) that they are properly instructed on the question of liability for the accident, then the undisputed testimony from unimpeached witnesses, on facts neither absurd nor impossible, was that plaintiff suffered in actual property damages an outlay of $30 for a doctor, $38.50 for clothes and $144 for wages, aggregating $212.50. Deducting that from the amount of the verdict, $250, leaves $37.50 to respond as damages for his conceded dislocation of bones and other hurts and pains. There could not be (as there was not) any complaint that such verdict was

excessive. Hence, that there was no injury to appellant, that the error if any from the generality of the instruction on the measure of damages did not affect the merits, arises to the dignity of a self-evident proposition, a mathematical demonstration. Nay, if there is any injustice about the verdict it is in favor of appellant and against respondent. So that where there is no dispute as to the amount of the damages, as here, and no contradiction of plaintiff's evidence in that regard, as here, and no complaint of an excessive verdict, as here, and where appellant has not lost a penny by reason of the fact that a limit was not put in the instruction on the amount of damages in each specific item of loss, as here, the judgment ought not to be disturbed, under the authority of the cases cited supra.

The case breaks on the ruling just made; therefore inviting questions urged upon us involving (1) a reconsideration, or the distinguishing, of the doctrine announced in Smoot v. Kansas City, 194 Mo. 513, relating to an instruction on the measure of damages, and (2) still others relating to a contention that the generality of plaintiff's instruction on the measure of damages (where defendant stands mute and asks none) is not reversible error under the doctrine of Browning v. Railroad, 124 Mo. l. c. 71, and a line of cases following that, are not reached and are reserved to be ruled in some case turning on them.

Let the judgment be affirmed. It is so ordered. All concur.