ALVIRA KING v. CITY OF ST. LOUIS, Appellant.

Division One, May 31, 1913.

1. NEGLIGENCE: Evidence of Other Accidents: Cured if Erroneous. Where the witness's statement that he had on a former occasion stepped into the same hole in the sidewalk into which plaintiff stepped and was injured, was not responsive to the question, an objection to it was sustained, upon motion to strike out it was stricken out, respondent's attorney promptly withdrew the answer, no exception was taken to the ruling, no ruling was requested, and no complaint of any error was made of the answer in the motion for a new trial, to reverse the judgment because such unsought answer was given would be to fly in the face of all precedent and common sense.

2. ———: ———: **Irretrievable Error.** Whether or not testimony that on a prior occasion a witness fell into the same hole in the sidewalk which caused plaintiff's injury is competent is a mooted question, and is not decided in this case, because it is not here, since the trial court upon appellant's request ruled it out and respondent withdrew it; and likewise, since no exception was saved to the court's ruling or complaint made thereof in the motion for a new trial, the question of whether the damage caused to defendant by the witness's unexpectedly telling of his own accident was cured by its being ruled out and withdrawn, is not decided.

3. ———: **Measure of Damages: Instruction: Reasonably Certain to Result.** Plaintiff's instruction which limits her recovery for future pain to such as she will suffer by reason of her injuries and "directly caused thereby," is not objectionable because it does not limit recovery for future pain to such as is "reasonably certain to result" from her injuries. The words "directly caused thereby" are narrower than the words "reasonably certain to result" therefrom, and leave a narrower way for speculative damages. [Waddell v. Railroad, 113 Mo. App. l. c. 687, is not approved or disapproved, because the vice of the instruction criticised in that case is not apparent.]

4. ———: ———: **Loss of Earnings: No Evidence: Nominal: Modest Verdict.** The petition charged that because of her injuries plaintiff had been "disabled from labor and her avocation as the keeper of a rooming house," and asked for no separate amount for loss of earnings, but placed her entire damages at a gross sum; and the jury were instructed to allow her "for any loss of the earnings of her labor directly caused" by her injuries. The evidence showed that she had eighteen rooms, and fifteen roomers, and earned in that way a net amount of $75 to $80 a month when the house was full, and her duties in running the house kept her busy; that after her injuries she kept the roomers who were in the house, but did not try to get any others; that her leg was broken, her ankle dislocated, and she is permanently injured; she remained in bed six weeks, and on crutches nine months, and will likely always be a cripple; and she spent $115 for medicines and physicians, and her verdict was $1157.09. *Held*, that she was entitled to go to the jury on the question of "the loss of the earnings of her labor" and recover at least nominal damages, and whether she could recover more than nominal damages it is unnecessary to decide, for, though there is no testimony from which her loss of earnings can be calculated with precision, the modest size of the verdict, considering her grievous hurts and permanent injuries, shows that the jury could not have allowed her anything of substance for the "lost earnings of her labor," and therefore the instruction was not error.

King v. St. Louis.

5. ———: ———: ———: ———: No Instruction for Nominal Damages: No Error Affecting Merits. Even if because of lack of precise evidence on the point plaintiff was entitled to no more than nominal damages for loss of earnings, and the jury should have been so told, but were not, but on the contrary were told to allow her "for any loss of the earnings of her labor directly caused" by her injuries, the judgment will not be reversed, if there was no error, the modest verdict being considered, which affected the merits. The court must "believe" the error affected the merits to the injury of appellant before it can reverse a judgment.

6. ———: ———: ———: Instruction: Indefiniteness. Where there is some evidence of the plaintiff's loss of the earnings of her labor, but the amount of the loss cannot be calculated with precision from the testimony, a general instruction on the subject is not reversible error. If defendant desired to have the amount limited to nominal damages it should have asked an instruction with that limitation. Mere indefiniteness in an instruction, when appellant stands mute, is not reversible error.

Appeal from St. Louis City Circuit Court.—*Hon. W. B. Homer*, Judge.

AFFIRMED.

*William E. Baird* and *Truman P. Young* for appellant.

(1) Evidence of other accidents from the same cause is not admissible in a suit against the city for damages on account of an alleged defect in a sidewalk. Goble v. Kansas City, 148 Mo. 475; Smart v. Kansas City, 91 Mo. App. 594; Edwards v. Paving Co., 92 Mo. App. 226; Stout v. Columbia, 118 Mo. App. 444; Calcaterra v. Iovaldi, 123 Mo. App. 352. (2) The withdrawal of evidence produced by plaintiff after the jury has heard the testimony will not cure the error of its admission where it is of such character that the recital of it is calculated to affect the minds of the jury in arriving at their verdict. Wojtylak v. Coal Co., 188 Mo. 286; Root v. Railroad, 195 Mo. 376; State v. Bateman, 198 Mo. 222; Neff v. Cameron, 213 Mo. 372; Bragg v. Rail-

road, 192 Mo. 365. (3) The third instruction given at the request of the plaintiff was erroneous, in this: (a) It did not limit recovery for future pain to such as was reasonably certain to follow. Waddell v. Railroad, 113 Mo. App. 687. (b) It allowed the jury to return a verdict for loss of earnings which she had sustained up to the time of the trial, and also for loss of earnings which she would sustain thereafter, though there was no sufficient evidence upon which the jury could find and ascertain any amount of earnings lost. Davidson v. Transit Co., 211 Mo. 345; Gibler v. Railroad, 203 Mo. 223; Wallack v. Transit Co., 123 Mo. App. 167; Paquin v. Railroad, 90 Mo. App. 118; Prenderville v. Transit Co., 128 Mo. App. 604; Grattan v. Suedmeyer, 144 Mo. App. 726; Heidbrink v. Railroad, 133 Mo. App. 40; Slaughter v. Railroad, 116 Mo. 269.

*A. R. & Howard Taylor* for respondent.

(1) An appellate court will not consider an objection or an exception to a ruling of a trial court during the trial of the cause, to which objection was not made and set down as a ground for a new trial in the motion for a new trial. Cowen v. Railroad, 48 Mo. 356; Saxton v. Allen, 49 Mo. 417; Carver v. Thornhill, 53 Mo. 286; State v. Brannan, 206 Mo. 639; Horgan v. Brady, 155 Mo. 669; State v. Scott, 214 Mo. 261. (2) The instruction attacked by appellant on the ground that there was no evidence of the loss of earnings of her labor by the respondent is not amenable to such objection. (a) There was undisputed testimony that respondent, at the time she was injured, was applying her labor to her business of keeping roomers in her own home and earning thereby a net sum of $75 to $80 per month. (b) There was undisputed evidence that respondent by the injuries she received was so disabled from her work that she had to stop this business, only keeping such roomers who were at

the time her lodgers and not soliciting others. (c) The evidence was without dispute that she was disabled from labor entirely for six weeks, being bedridden by the injuries, and thereafter only able to move about on crutches for nine or ten months. This shows that she sustained pecuniary loss of earnings, though the precise amount lost is indefinite. If she sustained any pecuniary loss, even though there is absence of definite proof as to the amount, she was entitled to nominal damages, and the instruction was correct, and if appellant desired to limit the recovery for loss of earnings, he should have asked the court to so instruct. (d) The law presumes that a jury under their oaths, will return a true verdict on the evidence and it is only when an appellate court is satisfied and believes, from the verdict itself, or some other cause shown by the record, that the verdict is excessive, that it will declare reversible error. Shinn v. Railroad, 248 Mo. 173. (e) The jury in this case for aught the court can know, gave in their verdict for loss of earnings a nominal sum to which the plaintiff was at least entitled, so that the instruction being clearly right, the only objection being a failure to limit the amount to nominal damages, the jury being presumed to return a verdict only for the loss shown by the evidence, the only ground on which the court can believe the verdict is excessive is that $1157.09 is too much compensation for an active good woman who has only had a broken leg, a torn and dislocated ankle from which she had suffered up to the time of the trial, and from which she must continue to suffer pain during life—who has by the injury been dropped from the roll of the world's workers. (f) The Supreme Court shall not reverse the judgment of any court "unless it shall believe that error was committed by such court against the appellant or plaintiff in error, and materially affecting the merits of the action. R. S. 1909, sec. 2082. The only prejudicial thing, as we view this record, oc-

curring on this trial, was the small verdict rendered. This court has on frequent occasions given this statute effect and force as intended. Its application in this case we submit would be in line with recent decisions by this court. Honea v. Railroad, 245 Mo. 645; Shinn v. Railroad, 248 Mo. 173.

LAMM, J.—Suing for $15,000 for personal injuries, plaintiff, a widow aged fifty years, had a verdict for $1157.09, and defendant on due steps appeals from the judgment thereon.

It is alleged in the petition, denied in the answer (and proved at the trial) that on a brick sidewalk on one of defendant's public streets, to-wit, Garrison avenue, on the 6th day of December, 1908, there was a hole, a sort of pitfall, of a width and depth to cause footmen to stumble or step therein and be hurt; that it existed for such length of time as to bring home notice to defendant; and that after nightfall on said date plaintiff walked on said sidewalk and, stepping into said hole, fell, thereby breaking her right leg, dislocating her right ankle (a lateral dislocation) and somewhat injuring her left hip and leg. It is also alleged in the petition, denied in the answer (and proved at the trial) that she was permanently disabled and, considering her age, will, it is likely, always be a cripple and suffer pain. It is alleged in the answer, but *not* shown at the trial, that her injuries were caused by her own negligence contributing thereto. It is undisputed that plaintiff paid out fifteen dollars for medicines and $100 for medical attendance. It is undisputed that she was made unconscious by her fall and consequent injuries; that she was caried to her house some distance away, by those who found her in that plight and by those of her own household who received word and went for her; that therefrom she was confined to her bed for about six weeks and then used crutches for nine or ten months; and, from about an

hour after her injury, for four or five months thereafter, was regularly under a doctor's care and from thence onward to the date of the trial had been under his treatment and in consultation with him at intervals on account of her yet visible injuries.

Defendant made no attempt to controvert the fact of plaintiff's fall or the extent of her pains and hurts, nor to controvert her medical testimony showing that, for one of her age, they were permanent, nor her lay testimony that by standing for any length of time about her household duties her ankle pains and swelling returned to her.

There was, however, a sharp dispute on the existence of any hole at all in the sidewalk; but there was testimony (and much of it) on her behalf that several bricks were out of the sidewalk and that their absence made a dangerous hole for several weeks before her injury. Moreover, it is not now contended by defendant that the state of the proof is such that an appellate court has any call to meddle with her verdict on that issue of fact. The case, then, may proceed on the theory that her injuries and defendant's negligence were submitted on substantial proofs and good instructions and found against defendant.

We are asked to reverse the judgment and remand the cause on the grounds following:

(1) Because of the introduction of certain testimony tending to show that other accidents had happened at the same hole.

(2) Because the withdrawal of the evidence on that score (which happened) did not heal the error.

(3) Because her instruction on the measure of damages was erroneous.

We will recur to pertinent parts of the petition, evidence and rulings in connection with a discussion of those grounds for reversal.

In our opinion there is no reversible error in the case. This because:

I. *Of alleged error in admitting testimony (and herein of whether the withdrawal of the same cured such error).*

With a witness (Lynas) on the stand, on direct examination the following occurred, of which alone the foregoing assignment of error is predicated:

"Q. Will you tell the jury the condition in which you saw the hole then? A. Well, I had been doing some work at the Morgan street address and was returning home to Olive street with a tool box on my shoulder. The box had some wrenches and pretty heavy tools in it, and naturally I would watch how I would carry the box more than the sidewalk, for fear of striking somebody with the box on my shoulder, and I stepped into this hole and tripped and fell flat, and spoke about the hole being in the sidewalk to my wife when I got home.

"Objected to. Objection sustained.

"Mr. Baird: I ask to have the testimony stricken out as to his falling in the hole.

"The Court: What he told his wife will be stricken out.

"Mr. Baird: Well, I ask to have the other testimony stricken out to the effect that he had fallen in the hole three weeks prior to this time.

"Mr. Taylor: I withdraw that.

"The Court: Well, it may be stricken out."

It will be observed, in the first place, that the answer of the witness was not at all responsive to the question asked by respondent's counsel; in the second place, that when that answer was objected to the objection was promptly sustained; in the third place, when a motion was made to strike out the testimony it was also promptly sustained; in the fourth place, respondent's attorney withdrew the testimony; in the fifth place (which is closer home) no exception was taken to any ruling in the premises; in the sixth place, no further ruling was requested; and, seventhly, to

cap the climax, no complaint was made in the motion for a new trial of any error in the regard in hand.

To reverse a judgment when the alleged error was not the fault of respondent but that of a witness—whose tongue was hung in the middle and wagged at both ends—when appellant's objection was sustained, when appellant's motion to strike out the alleged improper matter was also sustained, when, to crown all, respondent did all she could do to rectify the matter by withdrawing it from the jury, when no exception was taken below or further ruling asked, and when no error on that score is complained of in the motion for a new trial, would be to fly in the face of all precedent and the good sense of the thing.

This ruling disposes of the point.

But we allow ourselves an observation or two more. Thus: It is argued that testimony of other accidents at the place, from the same cause, is incompetent. That argument is followed up by another to the effect that the damage to defendant's side of the case was irretrievable after the lips of the witness let fall the disclosure of his fall at the hole. It was in the nature of unpardonable sin. As to which we say: The question whether such evidence is admissible is a mooted one. Irreconcilable views are held by courts of different jurisdictions, and this court has not been able to hold an even and uniform voice thereon. In Goble v. Kansas City, 148 Mo. l. c. 475 et seq., it was ruled one way, and in Charlton v. Railroad, 200 Mo. l. c. 442, without our attention being called to the Goble case, it was ruled (with some diffidence and under the phrase "it seems") the other. It may be, therefore, that the law in that regard is in a formative state and that the final word has not yet been spoken. Accordingly, when some case comes here turning on the point and calling for new exposition, we can deal with the philosophy of the thing in the light of precedent and settle it. In this case the assignment of error is dis-

posed of on other grounds, hence to decide this phase of it would be *obiter*. As to the argument based on irretrievable damage, it will do to say that the doctrine of unpardonable sin on the part of a witness, whereby a party to a suit is punished vicariously, without his fault, is so novel and anxious that it may well be kept in pickle (held in solution) for examination in the future. Why penalize a party for what he could not help or forecast?

II. *Of error in the instruction on the measure of damages.*

That instruction reads:

"If the jury find a verdict in favor of the plaintiff they should assess her damages at such a sum as they believe from the evidence will be a fair pecuniary compensation to her:

"1st. For any pain of body or mind which the jury believe from the evidence she has suffered or will suffer by reason of said injuries and directly caused thereby.

"2d. For any loss of the earnings of her labor which the jury believe from the evidence she has sustained, or will sustain, by reason of said injuries and directly caused thereby.

"3d. For any expense necessarily incurred for medicines, medical or surgical attention, to the reasonable value thereof, which the jury believe from the evidence she has incurred by reason of said injuries and directly caused thereby."

(a) It is assigned for error and argued that the instruction is bad because it does not limit recovery for future pain to such as was "reasonably certain to result" from her injuries. We are cited to Waddell v. Railroad, 113 Mo. App. l. c. 687, as authority for that proposition. However sound, the proper application of it can only be got at by looking to the

Injuries Reasonably Certain to Result.

context; for the doctrine of *noscitur a sociis* applies. The text of the Waddill case reads:

"In plaintiff's third instruction the direction relating to damages for future pain and suffering is subject to the criticism that it failed to restrict the consideration of the jury to such damages as are reasonably certain to result from the injury. Speculative, contingent or merely probable results are not a proper element of damages."

Observe that following the phrase, "reasonably certain to result from the injury," the court at once went on to say what concrete mischief it was striking at, viz., mere speculative, contingent or probable damages. Doubtless when Judge Johnson wrote the quoted clause he had before his eyes an instruction violating the rule announced. What the obnoxious words were we know not. Before, however, the pronouncement be taken as authority for the criticism leveled at the instruction we are dealing with in the instant case, we would have to know that the vice in the instruction criticized by him was precisely the same as the alleged vice in the instruction now held in judgment. Evidently that cannot be true, as presently shown, therefore the Waddell case is not in point.

Our instruction puts it to the jury to find damages for pain of body or mind which the jury believe from the evidence she has suffered or will suffer by reason of said injuries "and *directly* caused thereby." That restriction is more rigid on plaintiff and leaves less play for the jury's rambling at will than the rule announced in the Waddell case. Therefore, if plaintiff was entitled to an instruction allowing recovery for injuries "reasonably certain to result" there could be no error in favor of defendant by cutting down plaintiff's right to those damages "directly caused" by her injuries; for, as said "directly caused" fetches a smaller compass than "reasonably certain to result."

A result cannot be directly caused that is not reasonably certain to result, but a thing may be reasonably certain to result that is not directly caused but is indirectly caused. So, the word "directly" more clearly indicates proximate cause to the exclusion of remote cause.

(b) The final criticism of the instruction is aimed at its second paragraph, to-wit: "For any loss of the earnings of her labor which the jury believe from the evidence she has sustained, or will sustain, by reason of said injuries and directly caused thereby." It is argued that there is no evidence to support that charge.

Loss of
Earnings:
Nominal
Damages.

It will be profitable to attend to the petition and evidence in order to pass on the point understandingly. The petition sets forth the particulars of her disability and then alleges, *inter alia*, "that by her injuries so sustained the plaintiff has suffered and will suffer great pain of body and mind, has been permanently crippled and disabled from labor and avocation as the keeper of a rooming and boarding house, has lost and will lose the earnings of her labor and avocation," etc. Other items of loss and damage are set forth. However, the petition counts on damages in gross and does not put a value on the various elements of her damage. No question was made below on this method of pleading nor is any such question raised here. When it came to the evidence it is meager, but yet there was evidence directed to that averment, admitted without objection, viz.:

She testified she was keeping a rooming house and realized a *net amount* of between $75 and $80 a month when her house was full. That after her injuries she could not carry on her business to amount to anything; that she kept the roomers that were in the house but never tried to get any one else. That a Miss Davis who was in the house took care of plaintiff and of the

house after her injury. That she had eighteen rooms
and fifteen roomers at the time of her injury and got
$5.50 as the highest price for any room. She did not
furnish meals, but rented out rooms. She had been
running that rooming house since 1906 up to the time
of her injury and her duties in keeping it had kept her
busy. She applied her labor to that business. As said,
she was totally disabled for six weeks and in bed, went
on crutches for nine months and is lamed for life.
There was no estimate by any witness in dollars and
cents of her damages in loss of ''the earnings of her
labor,'' nor any testimony from which the amount
could be calculated with precision, but yet it is ob-
vious there was a substantial, actionable injury and
loss in that regard. It was neither *damnum absque
injuria* nor *vice versa.*

Under that testimony, indefinite as it was, as ar-
gued by her counsel, she was entitled to go to the jury
on that item and recover at least nominal damages.

The rule is that for every actionable injury there
is a corresponding right to damages and such an in-
jury arises whenever a legal right of plaintiff is vio-
lated. ''If there is no inquiry as to actual damages,
or none appears on inquiry, the legal implication of
damage remains . . ., therefore nominal damages
are given.'' [Suth. on Dam. (3 Ed.), sec. 9; 13 Cyc.
14.]

It is not necessary in this case for us to hold one
way or the other on whether she could recover more
than nominal damages. This is so because the modest
size of her verdict, considering her confessed grievous
hurts and permanent injuries, together with her un-
disputed pain of body and mind, shows that the jury
could not have allowed her anything of substance on
the score of ''lost earnings of her labor.'' We feel
sure of this, because, deducting her conceded doctor's
bill and the item for medicine, totalling $115, there is

left only a judgment of $1042.09 as just compensation for the broken leg, a dislocated ankle, a permanent disability and the consequent suffering of the widow.

(c) Moreover, if it be taken for granted, *arguendo,* that she was entitled to no more than nominal damages for loss of the earnings of her labor under the state of the proof, and that the jury should have been told so, yet, taking her small verdict, we cannot hold the error, if any, affected the merits and constituted reversible error. [Shinn v. Railroad, 248 Mo. 173.] We must *"believe"* the merits were affected to the injury of appellant before we can reverse a judgment. [R. S. 1909, sec. 2082.] We have no such belief, but *contra.*

<div style="float:left">No Error<br>Affecting<br>Merits.</div>

(d) But was it error at all? We think not. The instruction as it stood was well enough as a general instruction. If, now, defendant wanted it limited to nominal damages should it not have asked one on its own part with that limitation? We think so. [Browning v. Railroad, 124 Mo. l. c. 71 et seq.] This it did not do. Mere indefiniteness in a general instruction, when appellant stands mute and asks none, is not reversible error. [2 Thomp. on Trials (2 Ed.), sec. 2341.]

Let the judgment be affirmed. It is so ordered. All concur.