# GILLIE CARTER, RESPONDENT, v. WABASH RAILROD COMPANY, Appellant.

### St. Louis Court of Appeals, February 8, 1916.

1. **RAILROADS: Injury at Crossing: Failure to Give Signals: Causal Connection.** Sec. 3140, R. S. 1909, requiring either that the bell on a locomotive engine approaching a public road crossing be kept ringing for at least eighty rods from such crossing or that the whistle be sounded frequently for the same distance, supplies the causal connection between a failure to give such signals and an injury sustained in a collision with the engine at the crossing; and, upon showing such failure and injuries, the plaintiff makes a prima-facie case, unless the evidence conclusively shows that the injuries resulted from the negligence of the injured party, or, at least, from some cause other than the failure to give the signals.

2. **NEGLIGENCE: Contributory Negligence: Sudden Danger.** Where the evidence in a negligence case reveals that a sudden danger was thrust upon the injured person, through the fault of another, causing him to become excited for the while, he is not to be held to the same degree of accountability, with respect to exercising prudence, as is one who is afforded time to deliberate and to act after so doing.

3. **RAILROADS: Injury at Crossing: Contributory Negligence: Sudden Danger.** In an action for the death of plaintiff's husband in a collision at a crossing between a locomotive engine and a team he was driving, where it was shown that defendant failed to give the crossing signals required by Sec. 3140, R. S. 1909, and that the team became frightened at the sudden appearance of the train and rushed upon the crossing despite decedent's efforts to prevent their doing so, *held*, under the evidence, that defendant's failure to give the crossing signals may be regarded as the proximate cause of the collision, or, at least, as contributing with the conduct of the team, resulting from its sudden fright, to cause the injury, since decedent might have had the team under control, so as to have prevented them from rushing upon the crossing, had the signals been given, and hence the question of defendant's negligence was for the jury; *held, further*, that the question of whether decedent was guilty of contributory negligence was for the jury, since, in the excitement of the sudden danger thrust upon him, through the failure of defendant to give the crossing signals, he is not to be held to the same accountability for failing to look and listen as would be a prudent person who was afforded time to deliberate and to act after so doing.

4. NEGLIGENCE: Proximate Cause: Independent Intervening Cause. The defendant in a negligence case is not relieved of liability because an independent intervening cause contributes with his negligence to produce the injury.

5. DEATH BY WRONGFUL ACT: Damages: Instructions: Waiver of Generality. In an action by a wife for the wrongful death of her husband, under Sec. 5425, R. S. 1909, where there was evidence that decedent was a farmer and was engaged in performing work as such on the day of his death, the instruction on the measure of damages was not erroneous for permitting a recovery for the value of plaintiff's support by her husband, when there was no evidence as to the amount her husband had earned, since the evidence justified a recovery of nominal damages for loss of support, at least, and defendant did not request that such damages be limited to a nominal amount.

6. DAMAGES: Instructions: Waiver of Generality. Where, in a negligence case, plaintiff is entitled to recover nominal damages, at least, it is not error to fail to limit the recovery to a nominal amount, in the absence of a request for such limitation by defendant.

7. APPELLATE PRACTICE: Prerequisites to Review of Instructions. Where the motion for a new trial, in an action by a wife for the wrongful death of her husband, contained no assignment that the verdict was excessive, an instruction authorizing a recovery for loss of probable support, when there was no evidence of decedent's earnings, would not be regarded as reversible error, even though the objection were otherwise tenable.

Appeal from Audrain Circuit Court.—*Hon. James D. Barnett*, Judge.

AFFIRMED.

*James L. Minnis* and *David H. Robertson* for appellant.

(1) Section 2864, as amended by the Act of 1905, Laws of Missouri of 1905, pages 135, et seq., allowing a recovery of not less than two, nor more than ten thousand dollars, in the discretion of the jury, as applied by the court in this case, is unconstitutional and void, because in conflict with the Fourteenth Amend-

ment to the Federal Constitution, and section 30, article 2, of the Missouri Constitution. Yick Wo v. Hopkins, 118 U. S. 356; Gilkeson v. Railroad, 222 Mo. 201-204. (2) The court erred in refusing to instruct a verdict for the defendant at the close of the evidence for the plaintiff, and at the close of all the evidence. The evidence shows that the decedent went upon the track and was struck, when he knew or by the exercise of ordinary care could have known of the train's approach, in time to have prevented the injury. This was such contributory negligence as to bar the plaintiff's recovery. Green v. Railroad, 192 Mo. 139; Porter v. Railroad, 199 Mo. 82; Sanguinette v. Railroad, 196 Mo. 466; Hayden v. Railroad, 124 Mo. 566; Huggart v. Railroad, 134 Mo. 673; Stotler v. Railroad, 204 Mo. 619; Jones v. Barnard, 63 Mo. App. 501; Kelsay v. Railroad, 129 Mo. 362; Hook v. Railroad, 162 Mo. 569; Dyrcz v. Railroad, 238 Mo. 33; Burge v. Railroad, 244 Mo. 76; Laun v. Railroad, 216 Mo. 563; Schmidt v. Railroad, 191 Mo. 215. The evidence of the fireman, for the defendant, should be considered in connection with the plaintiff's evidence. Osborn v. Railroad, 166 S. W. 1121; Furber v. Bolt & Nut Co., 185 Mo. 311; Link v. Hathaway, 143 Mo. App. 509. The fireman testified that the decedent actually looked at the train and saw it when he was from fifty to seventy feet from the track. As he saw the train, the failure to sound the crossing signals, if such was the fact, is immaterial. Mockowik v. Railroad, 196 Mo. 550, 569-570; Murray v. Transit Co., 176 Mo. 183, 189; McManamee v. Railroad, 135 Mo. 449; Moody v. Railroad, 68 Mo. 474; Heintz v. Transit Co., 115 Mo. App. 671; Fry v. Transit Co., 111 Mo. App. 324, 335; Hutchinson v. Railroad, 195 Mo. 546. Since the decedent either saw, or could by the exercise of ordinary care have seen the train approaching, the rate of speed is immaterial, and

furnished no ground for recovery. Stotler v. Railroad, supra. Green v. Railroad, supra. (3) (a) The court erred in giving the instruction on the measure of damages, under the facts of this case, and such action of the court deprived the defendant of property without due process of law, and denied the defendant the equal protection of the laws. See authorities under point 1. (b) Further the instruction was erroneous because there was no evidence upon which the jury could find the value of plaintiff's support upon which to base the instruction. McNeil v. Cape Girardeau, 153 Mo. App. 424; O'Brien v. Loomis, 43 Mo. App. 29; Wallack v. Transit Co., 123 Mo. App. 160; Stiles v. Railroad, 130 Mo. App. 162.

*E. S. Gantt, Fry & Rodgers* and *Fauntleroy, Cullen & Hay* for respondent.

(1) (a) Plaintiff's instruction on the measure of damages has been approved in the following cases: Boyd v. Railroad, 249 Mo. 110; Loomis v. Railroad, 188 Mo. App. 205; Kelly v. Higginsville, 185 Mo. App. 55; Baldwin v. Harvey, 177 S. W. 1088. (b) Plaintiff was not required to show that her husband had been earning wages, neither was she required to show in dollars and cents what her husband earned as a farmer, to entitle her to recover for pecuniary loss. It was only necessary for her to show that her husband was engaged in the business of farming, his age, health, habits, and that he left surviving him his widow and minor children. Loomis v. Railroad, 188 Mo. App. 206; Kettlehake v. Car. & Foundry Co., 177 Mo. App. 539; Maier v. Railroad, 176 Mo. App. 36, 37. (c) Appellant cannot now complain of plaintiff's instruction on the measure of damages, for the reason that no point was made or saved by appellant in its motion for a new trial on an excessive verdict. (2) No such judicial legislation has been attempted as to lay down

the rule that the traveler approaching a railway cross-
ing is bound, under all circumstances, to stop as well
as to look and listen for approaching trains; but the
courts generally agree that whether he ought to stop,
in the exercise of ordinary care and caution, is a ques-
tion for a jury, depending upon the circumstances in
each particular case. Elliott v. Railroad, 105 Mo. App.
523; Frank v. Transit Co., 99 Mo. App. 323; Huckshold
v. Railroad Co., 90 Mo. 548; Donohue v. Railroad Co.,
91 Mo. 357; Mayes v. Railroad Co., 71 Mo. App. 142;
Petty v. Railroad Co., 88 Mo. 318; Johnson v. Railroad
Co., 77 Mo. 546; Russell v. Receivers, 70 Mo. App. 88;
Baker v. Railroad Co., 122 Mo. 533, 544; Kelly v. Rail-
road Co., 88 Mo. 534; O'Connor v. Mo. Pac. Co., 94
Mo. 150. (3) The plaintiff made a prima-facie case
under the statute requiring signals to be given when
she introduced testimony tending to show that signals
were not given as required by the statute. McNulty v.
Railroad, 203 Mo. 475; McGee v. Railroad, 214 Mo.
545; Huckshold v. Railroad, 90 Mo. 555; Crumpley v.
Railroad, 111 Mo. 157; Green v. Railroad, 192 Mo. 143.
(4) Before the court can declare as a matter of law
that decedent, in an action against company for the
killing of decedent at a crossing, was guilty of neg-
ligence contributing directly to the injury, the evidence
must be substantially all one way, and not such that
reasonable minds might differ with respect thereto.
Weller v. Railroad, 164 Mo. 180; Byars v. Railroad,
161 Mo. App. 692; Petty v. Railroad, 88 Mo. 306; Dunn
v. Railroad, 21 Mo. App. 200. (5) (a) The court did
not err in refusing to instruct a verdict for the defend-
ant at the close of the evidence for plaintiff. Baker v.
Railroad, 122 Mo. 533; Kenny v. Railroad, 105 Mo.
270; Petty v. Railroad, 88 Mo. 306; Crawley v. Rail-
road, 24 Mo. App. 119; Young v. Railroad, 72 Mo. App.
263; Dunwoody v. Railroad, 136 Mo. App. 514, 515;
Woodward v. Railroad, 152 Mo. App. 468; Weller v.

Railroad, 120 Mo. 645, 646, 647; Bluedorn v. Railroad, 108 Mo. 439; Lang v. Railroad, 115 Mo. App. 498, 499; Smith v. Railroad, 150 Mo. App. 1; Green v. Railroad, 52 Minn. 79; Railroad v. Hogland, 66 Md. 149.   (b) Certainly, the court did not err in refusing to instruct a verdict for the defendant at the close of all the evidence.   Turner v. Railroad, 134 Mo. App. 397; Mitchell v. Railroad, 122 Mo. App. 59; Culbertson v. Railroad, 178 S. W. 269; Sanguinette v. Railroad, 196 Mo. 493; Cosgrove v. Railroad, 87 N. Y. Ct. App. 88; McCullough v. Railroad, 59 N. W. 618; Mitchell v. Railroad, 97 N. W. 1112; Warn v. Railroad, 126 N. W. 1104; Lonergan v. Railroad, 53 N. W. 236; Sights v. Railroad, 78 S. W. 172; Durham v. Railroad, 108 Ga. 547; Carey v. Railroad, 71 N. E. 244; Schemerhorn v. Railroad, 53 N. Y. S. 279; 33 App. Div. 17; Doll v. Railroad, 65 N. Y. S. 454, 52 App. Div. 575; Texas & P. Ry. v. Anderson, 2 Wilson Civ. Cases, Ct. App. 203; Railroad v. Byas, 12 Tex. Civ. App. 657, 35 S. W. 22; Norton v. Railroad, 113 Mass. 366; Prescott v. Railroad, 113 Mass. 370; Shaw v. Railroad, 8 Gray, 45; Pollock v. Railroad, 124 Mass. 158; Railroad v. Barnett, 59 Pa. St. 259; Railroad v. Stinger, 78 Pa. St. 218; Hudson v. Railroad, 14 Bush, 303; Lawrence v. Railroad, 87 Ga. 755; Voak v. Railroad, 75 N. Y. 320; Carraher v. Bridge Co., 34 Pac. 828; Railroad v. Baptist, 73 S. E. 477.

NORTONI, J.—This is a suit for damages accrued to plaintiff under the wrongful death statute on account of the negligence of defendant.   Plaintiff recovered and defendant prosecutes the appeal.

The grounds of negligence relied upon relate to the failure of defendant to sound the bell or whistle attached to its locomotive engine, on approaching a public road crossing at which plaintiff's husband was killed.   It appears plaintiff's husband and his neigh-

bor Byars were en route home from Benton City, riding in an ordinary lumber wagon drawn by a team consisting of one horse and a mule. The hour was about noon, and they were driving south in the highway approaching the crossing on defendant's track, when, it appears, decedent's team became frightened and ran upon the track immediately in front of defendant's locomotive and train. Plaintiff's husband was engaged in driving the team. The railroad track runs slightly southeast and northwest through Benton City, a small town, while the highway—that is, Sims street— on which plaintiff's husband was driving, runs north and south.

Sims street is at the eastern border of Benton City and is a much used public highway, on which defendant maintained a railroad crossing. Front street in Benton City parallels the railroad track on the north side, and immediately south of it—that is, between it and the railroad tracks—are a number of residences, outhouses, trees, etc., so as to more or less obstruct the view to the westward of one driving south on Sims street until Short street is reached, where the view is more or less open, but obstructed further west to some extent. Decedent, driving the team came south on Sims street, across Short street and south of the latter street, where, upon defendant's right of way, several obstructions to the western view appear. Besides defendant's main line, it maintained two sidetracks north of it. Near, or about four hundred and twenty-five feet west of the Sims street crossing, and forty-four feet to the north of the track, on the right of way, defendant maintained its stock pens. Further west were certain corn cribs and other small buildings. About fourteen feet north of the main track was what is called the passing track, and eighteen feet, eight inches north of the passing track—that is, between thirty-one and thirty-two feet north of the main track

—was defendant's house track. Both of these side-tracks separated from the main line some distance west of the Sims street crossing. On the stock track were standing a string of stock cars, immediately south of the stock pen, and also a furniture car, with its west end opposite the east end of the stock pens, but the furniture car was situate on the curve of the track and was about forty feet in length. The east end of the furniture car, it is said, stood about twenty-three feet north of defendant's main track and other cars were west of it. All of these tended to obstruct the view to the westward of one driving toward the railroad crossing on Sims street.

Defendant's train which occasioned the death of plaintiff's husband was running, it is said, from fifty to sixty miles an hour in an endeavor to make up lost time, for it was forty minutes late. It is in evidence, too, that defendant's westbound passenger train was due at Benton City about that time, and, as plaintiff's husband approached the tracks, he was seen to be looking toward the eastward. The evidence tends to prove that, from a point forty feet north of the crossing, he might have seen the approaching passenger train from the west—say for seven or eight hundred feet. The evidence is, that the wind was blowing from the east, and defendant's train came from the west at a high rate of speed—from fifty to sixty miles per hour—and on the part of plaintiff a number of witnesses say neither bell nor whistle was sounded—that is, the usual statutory crossing signals were not given. Defendant's fireman says—that is, in his evidence most favorable to plaintiff—that he observed plaintiff's husband driving toward the track when he was about fifty feet north of the crossing, and his face at that instant was to the southeast, but he immediately looked to the westward and at the same time the mule he was driving became frightened and started forward and plaintiff's

Carter v. Wabash R. R. Co.

husband was trying to hold it. It is to be inferred from the evidence that the team became unmanageable and ran immediately in front of the train. Indeed, the mule escaped entirely—that is to say, he crossed the track without serious hurt, while plaintiff's husband and his companion, Byars, were killed as a result of the collision, as was also the horse.

It is quite obvious from the evidence that the mule became frightened on the coming into view of the fast approaching train as it emerged from beyond the furniture car on the sidetrack, and ran forward in an endeavor to cross ahead of it. Indeed, it appears that Byars·laid hold of the lines as well, and jointly endeavored, with plaintiff's husband, to control the team. The witness says concerning this: "Yes, as soon as he saw the mule was scared, he looked and got up and the other man looked and commenced pulling on the line; well it looked to me as if the man ahold of the lines wasn't going to hold the mule and that's what the other man thought and went up to help him and they was both holding the lines." Moreover, this witness, the fireman, said that both men appeared to be excited at the time.

It is argued that the court should have directed a verdict for defendant, but we are not so persuaded. Although there is evidence on the part of defendant tending to prove the necessary signals on approaching the crossing were given, it is conceded in the argument that the evidence is abundant on the part of plaintiff tending to prove the contrary—that is to say, that defendant was negligent, in that it failed to sound the signals required by the statute. The statute (section 3140, R. S. 1909) requires either that the bell attached to a locomotive engine approaching a public road crossing shall be kept ringing for a distance of at least eighty rods from such crossing, or that the steam whistle attached to the locomotive shall be frequently

sounded for the same distance. Under this statute, it is said, if it appears in the evidence that the signals were not given, and that a collision occurred at the crossing, then a presumption is afforded, perforce of the statute, to the effect that such facts bear the relation of cause and effect, so as to cast the burden on defendant to show the failure to give the statutory signals did not cause the injury. In other words, the statute supplies the causal connection, and, in every instance on such facts appearing, plaintiff makes a prima-facie case for the jury, unless it conclusively appears in the evidence that the injury was occasioned through the negligence of the party suffering hurt, or at least solely from some cause other than the failure to give the signals. [See McGee v. Wabash R. Co., 214 Mo. 530, 114 S. W. 33; Green v. Mo. Pac. R. Co., 192 Mo. 131, 90 S. W. 805.]

But it is argued on the part of defendant that railroad tracks are in and of themselves a signal of danger to all persons *sui juris* and therefore the law casts the duty upon one about to go upon them to look and listen for the approach of trains; moreover, if he omits to do so and is injured as a result thereof, he is to be denied a recovery on the ground of contributory negligence. On these premises it is argued that, as it appeared plaintiff's husband, who was driving the team, could have seen the train when he was from forty to fifty feet north of the main track, no recovery may be allowed, for that he omitted to look and listen at that time. But the evidence is, that, at that moment, he was looking to the southeast—it may be for the approach of a passenger train then about due from the east. He turned immediately to look to the west, as his attention was called by his companion Byars, and the mule, it appears, at that instant started forward toward the track, when both the decedent and Byars put forward their best efforts to control him. The ar-

gument advanced would be persuasive, indeed, were it
not that the evidence tending to prove the mule became
unmanagable when plaintiff's husband was from forty
to fifty feet from the track and ran forward to the
point of collision notwithstanding the effort of both
decedent and Byars to control him. The evidence of
the fireman suggests that the mule became frightened
on the sudden appearance of defendant's train, about
the time it emerged into view from behind the fur-
niture car standing shortly west of the crossing. In
this view, it may be said that the failure of defend-
ant to sound the necessary signals for the crossing
contributed with the fright of the mule to the colli-
sion which resulted. In such circumstances, where the
evidence reveals a sudden danger thrust upon one
through the fault of another, so as to occasion a con-
dition of excitement for the while, it is certain' that
the person thus excited and injured is not to be held
to the same degree of accountability in respect of prud-
ent conduct as is one who is afforded time to deliberate
and to act after so doing. [See Garrett v. Wabash
R. Co., 159 Mo. App. 63, 139 S. W. 252.] The evidence
is, that plaintiff's husband, his companion Byars, as
well as the team, were excited, and, no doubt, both men
did the best they could in the circumstances in the par-
ticular case. Notwithstanding the joint efforts of de-
cedent and Byars, the mule plunged forward upon the
track, and the evidence is, the horse impelled by the
mule did likewise, and the horse perished in the colli-
sion, as did the two men, while the mule escaped be-
yond the track with slight injury.

Although it be true that defendant's negligence
in omitting to sound the signals must be traced as a
proximate cause of the injury, the right of recovery is
not to be denied because, forsooth, the unfortuitous
conduct of the mule contributed as well. [See Bas-
sett v. St. Joseph, 53 Mo. 290.] If the conduct of the

mule appeared to be the sole and only cause of the collision, another and distinct principle would attend the situation. But here it is to be inferred that the mule, theretofore quietly wending its way toward the track, unaware of the approach of the train, was suddenly frightened through its appearance, running fifty to sixty miles per hour, as it emerged from behind the furniture car but shortly away, and, in this condition of excitement, plunged forward to cross the tracks. Obviously the failure of defendant to continually ring the bell or frequently sound the whistle for a distance of eighty rods west of the crossing may be regarded as the proximate cause of the collision, for that the mule was unaware of the presence of the train until it suddenly came into view with a seeming threat of disaster. The evidence of the fireman is, that the mule was in no wise excited until it saw the approach of the train, whereupon it was suddenly seized with fright, and this being true, liability is entailed against defendant for its failure to sound the statutory signals, in that, had they been sounded, no doubt plaintiff's husband might have had the situation sufficiently in hand to have saved himself before the element arising on account of the uncontrollable fright and conduct of the mule intervened. [See Mitchell v. St. Louis, etc. R. Co., 122 Mo. App. 50, 97 S. W. 552.] The case is clearly one for the jury and though we have considered the matter extensively because of the earnest arguments put forward in the briefs, we do not regard the question as a debatable one.

Plaintiff's instruction on the measure of damages is general in character, and submitted, among other things, her right to recover for pecuniary loss—that is, the value of support by her husband. There is no evidence tending to prove the amount plaintiff's husband earned. It appears he was a farmer, aged thirty-nine years, robust and in good health, and that his family

consisted of his wife and at least two children. He had been engaged on the day of his death in delivering hogs from the farm to the market in town, so it sufficiently appears that he did work incident to his avocation. The verdict is for $7500. The suit proceeds under the penal statute—that is, section 5425, Revised Statutes 1909—which, according to the decision of the Supreme Court in Boyd v. Mo. Pac. R. Co., 249 Mo. 110, 155 S. W. 13, authorizes a recovery of $2000 as penalty and above that amount compensatory damages, not exceeding in all $10,000. It is argued that, according to this view of the statute, all of the recovery above $2000—that is, the amount here, $5500—is compensatory and, therefore, the court erred in submitting the matter of the value of the probable support to be rendered by decedent to his wife without evidence of his earning capacity. But obviously this element of damages was properly incorporated in the instruction. Enough appears at least to authorize a recovery of nominal damages in respect of this matter. Such being true, the instruction is not to be regarded as reversible error. If defendant desired the right of recovery on this ground to be limited to nominal damages, it should have asked an instruction accordingly. In failing to do so, it waived its right to complain here of the general character of the instruction referred to, when it appears there was some evidence—at least enough to authorize a recovery of nominal damages as for loss of earnings. [See Browning v. Wabash, 124 Mo. 55, 27 S. W. 644; Mabrey v. Gravel Road Co., 92 Mo. App. 596; Nelson v. United Rys. Co., 176 Mo. App. 423, 158 S. W. 446; State ex rel v. Reynolds, 257 Mo. 19, 165 S. W. 729; King v. St. Louis, 250 Mo. 501, 157 S. W. 498.] Moreover, there appears to be no assignment in the motion for a new trial to the effect that the verdict is in any wise excessive. This being true, the matter complained of should not

be regarded in any event as reversible error. [See Shinn v. United Rys. Co., 248 Mo. 173, 154 S. W. 103.]

The judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.