FRANCES NICHOLAS, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, A CORPORATION.—188 S. W. (2d) 511.

Kansas City Court of Appeals.  May 21, 1945.

422

*M. D. Campbell, J. A. Lydick, Waldo Edwards* and *D. L. Dempsey* for appellant.

*Roland A. Zeigel* and *E. M. Jayne* for respondent.

BLAND, P. J.—This is an action for damages by the owner of a refrigerator truck. It is alleged that the truck was demolished and the cargo damaged as the result of the primary negligence of the defendant in the operation of one of its trains. Plaintiff recovered judgment for $2,000, from which defendant appeals.

Plaintiff's petition is founded solely on primary negligence: (a) Defendant's violation of an ordinance of city of Cameron, Missouri, prohibiting the running of a train within the city limits in excess of the rate of speed of 15 miles per hour; (b) defendant operated its train at a high and dangerous rate of speed; (c) defendant failed to give notice and warning of the approach of the train by sounding the whistle or bell.

The answer was a general denial, coupled with a plea of contributory negligence, alleging that at the time and place plaintiff's truck and cargo were damaged plaintiff's agent and driver of the truck was negligent, in that he failed to use the highest degree of care in operating the truck at the time and place in question by driving the truck onto defendant's railroad track in close proximity to and in front of defendant's approaching engine when he saw and heard said engine approaching said crossing, or, by the exercise of the highest degree of care, could have seen and heard the same approaching; and that such negligence directly contributed to whatever damage plaintiff suffered.

The first question urged is whether plaitniff's agent (the driver) was guilty of contributory negligence as a matter of law, so as to

preclude recovery on her part. It has become axiomatic in determining this question that the evidence for plaintiff must be accepted as true and plaintiff must be allowed the benefit of all reasonable inferences in her favor that may be drawn from all the evidence. The defendant offered no evidence but stood on its demurrer to plaintiff's evidence.

The collision occurred about 9 o'clock P. M. on August 16, 1943, at a point where Walnut Street in the City of Cameron, Missouri, intersects and crosses defendant's tracks. Walnut Street runs north and south and defendant's tracks run east and west. The truck was being driven northward and the train was going west. There are two sets of tracks. The first or south one is a switch track; the second or north one is the main track on which the collision occurred. The street and crossing were of concrete construction. From a point about four blocks south of the intersection, Walnut Street is on an incline and this condition continues on north of the track for about a block. The driver described the street as "rough, pitted out . . . wore" to such an extent that it caused the truck to "jar" and "shake around" as he drove over it. To the east of the intersection the tracks are straight for approximately 750 feet and then curve to the north. There was nothing to obstruct the driver's view of an approaching train from the east for that distance after he had reached a point within approximately 50 to 60 feet of the switch track. So much for the physical surroundings.

Adams, the driver, had been employed by the plaintiff as a truck driver for a period of some six years prior to the accident and he had been driving this particular truck over the same crossing on an average of twice a week for about eight months prior to the accident. It was a Chevrolet Refrigerator Truck, about 18 to 20 feet in length. Plaintiff's office was located in Kirksville, Missouri, and her trucks would make regular trips to the Packing Houses in Kansas City, Kansas, where they would be loaded with meat and other supplies for merchants along the regular route between those two cities. On the day of the casualty the truck in question had a load of about 9,000 pounds, consisting of "meat, cured, smoked, fresh, lard and packing house products". The fresh meat was composed of "quarters of beef" and "fresh meat of that kind". The fresh meats "were hung on hooks from the side of the body" of the truck. The part of the load that was not hung and not in small boxes was placed on the floor of the truck. There were two tanks, drums or barrels in the truck filled with ice, salt and dry ice, which were for the purpose of maintaining the temperature in the body of the truck. In view of these circumstances, it was necessary, in the operation of the truck to drive it carefully in order to protect the cargo, for the reason that unless it was so driven the load was likely to shift "and spill the brine water out of your tanks on to your load". It was also neces-

sary to drive carefully so as to be "sure to hit the tracks straight and not at an angle". It was necessary to take the curves "slow and easy", to go slow over rough places and not suddenly to apply the brakes; that "slow and careful driving" was necessary; that on account of the character of the load and the condition of the street "between the two tracks up to the main line track" it was necessary for the driver to give his "undivided attention to driving the truck", and he did give his undivided attention to driving it. It was also necessary for the driver to shift to double low gear to prevent the load from being disturbed in going over the crossing. The driver was asked whether, in his opinion, he could have safely diverted his gaze from where "he was going" and "what the car was doing", at the time he was driving over the crossing on this particular occasion. Before counsel for defendant could object, he answered that he could not but the objection was subsequently sustained by the court.

The driver drove from Kansas City, Kansas, to Cameron, Missouri, over Highway 69 and then over Walnut Sreet to the point of the collision. When he turned onto Walnut Street, at a point about 8 blocks south of the intersection, he was driving down-grade and shifted into second gear in order to slow down the speed of the truck so as not to dislodge any part of the load. After reaching the bottom of the decline he continued to drive in second gear up the incline the four blocks to the intersection. When he reached a point 50 or 60 feet south of the switch track he began to slow down and brought his truck to a complete stop, about a truck's length, or 18 to 20 feet from the switch track, and looked both east and west down the track. At that point he could see east (the direction with which we are concerned) for a distance of approximately 750 feet, and he said there was no train within that distance. He heard no warning from the approaching train. He then shifted into double low gear and drove at a slow speed, possibly two and one-half to three miles per hour, crossing the switch track and onto the main track, a distance of about 30 feet, without looking again, and when he was on the main track the collision occurred.

Just what part of the truck was struck or where it was on the main track is not made clear, because the driver was rendered unconscious and knew nothing of what occurred immediately after the collision. Apparently no one else saw the accident.

Defendant argues that Adams' failure to look again to the east after he started from a point 30 feet from the main track and driving at a slow speed and under conditions when his truck could have been stopped within a very few feet, is such contributory negligence as to preclude recovery.

Defendant cites a number of cases announcing the well recognized principle of law that as against primary negligence, contributory negligence is a complete defense, among which is State ex rel. v.

Shain, 105 S. W. (2d) 915, 918, and also cases recognizing the well established rule that before one goes upon a railroad track he must look and listen for approaching trains, and if he fails to look and listen when to have done so would have enabled him to have seen or heard the train in time to have avoided being injured, then he is to be adjudged guilty of contributory negligence as a matter of law, among which are Willig v. Chicago, B. & Q. R. Co., 345 Mo. 705, 137 S. W. (2d) 430, 435 and Kelsay v. The Mo. Pac. Ry. Co., 129 Mo. 362. There can be no dispute about such general rule being the law of this state. But are such cases controlling under the facts in the instant case? Here the driver did stop, look and listen at a point within 30 feet of the main track and at a point where he could see a distance of 750 feet and saw no train and heard none. Can we say as a matter of law, under all the circumstances, his failure to look again was such negligence as to preclude the plaintiff from recovering.

We think not.

The driver testified positively that he did stop, look and listen within 30 feet of the main track and this testimony is not disputed. He said there was no train within 750 feet of him and there was no evidence to the contrary. Whether, under the evidence of this case, he was negligent in assuming that a train would not run at a rate of speed so great and dangerous as to collide with him while he traveled the distance necessary to cross the main track, was a question for the jury. [Dutton v. Terminal Ry. Association, 316 Mo. 979; Allen v. C. B. & Q. Ry. Co., 281 S. W. 737; Ward v. Mo. Pac. Ry. Co., 277 S. W. 908.]

However, defendant cites the case of Herring v. Franklin et al., 98 S. W. (2d) 619, in which the Supreme Court held that one cannot lawfully rely upon a train being operated in accordance with an ordinance, but is guilty of contributory negligence, as a matter of law, if he fails to look, notwithstanding such ordinance. But the facts in that case are entirely different than those in the case at bar. Here, the driver of the truck was required, not only by the character of his load but the law, itself, to watch ahead carefully where he was driving.

In Craig v. City of Sedalia, 63 Mo. 417, 420, the Supreme Court held that the trial court erred in refusing to give the jury the following instruction: "That if the plaintiff's son was not using ordinary care at the time of the accident, but was riding in a careless or negligent manner, and *over ground which he knew to be irregular and uneven*, the city would not be liable." (Italics ours.)

. The facts in the case at bar show that the driver of the truck was familiar with the crossing and, while he could use it in the exercise of the highest degree of care, his duty was as great in reference to observing where he was driving as to watching for the possible approach of a train. [See Clark v. Miss. River & B. T. Ry. Co., 23 S. W. (2d)

174; Shonhoff v. Jackson Branch R. R. Co., 97 Mo. 151; Madison v. Mo. Pac. Ry. Co., 60 Mo. App. 599; Maxwell v. K. C., 52 S. W. (2d) 487, 491; Deland v. City of Cameron, 112 Mo. App. 704.] In this instance he attempted to discharge both obligations by looking for a train and observing the roadway in front of him. It will not do to say that the circumstance that the ordinance was being violated by the defendant has no bearing upon the question of as to whether the driver was guilty of contributory negligence, as a matter of law. [See Strauchon v. Met. St. Ry. Co., 232 Mo. 587, 600.] While it is true that "a person who goes upon a railroad track or purposes to cross it, must use his eyes and ears to avoid injury", such a rule, like most others, is not of universal application (Jennings v. The St. Louis Iron Mt. & So. Ry. Co., 112 Mo. 268, 275, 276) and the duty of the driver, in this instance as to looking for a train, was modified to some extent by the high rate of speed at which the train was traveling. In the case last cited, it is said, l. c. 276: "Such a rule of conduct (that is, the aforesaid duty of a driver purporting to go upon a railroad track) must have grown out of experiences and observations that were common and ordinary; hence the rule, like most others, is not of universal application, but has exceptions under exceptional circumstances. As in Petty v. Railroad, 88 Mo. 308, the whistle was sounded forty, instead of eighty, rods from a crossing, it was held not negligent in law for one to proceed over the track, if he could have done so safely, had the train been eighty rods away. In Bluedorn v. Railroad, 108 Mo. 449, the court says: '*Where, as here, there is a flagrant violation of a law or municipal regulation, resulting in an injury, contributory negligence should be clearly made out before the court relieves the defendant from liability on that ground.*' See also Kellny v. Railroad, 101 Mo. 76.

"The circumstances in this case, we think, call for an exception to the rule. Plaintiff was not a trespasser, but had a right, equal to that of defendant, to the use of the street. *Plaintiff also had the right to presume that defendant would discharge its duties and obey the laws and ordinances of the city, regulating its management of trains.* Eswin v. Railroad, 96 Mo. 296; Kellny v. Railroad, *supra*; Beach on Contributory Negligence." (Italics ours.) [See, also, Baker et al. v. K. C., Ft. Scott & Memphis R. R. Co., 147 Mo. 140, 166.] In the last case it is said, l. c. 166, 167: "If plaintiff was thrown off her guard by the neglect of defendant or was lulled thereby into a sense of security so that she went upon the crossing as she did then her case is an exception to the general rule". In Coonley v. Lowden, et al., 12 N. W. (2d) (Iowa) 870, 875, the court said that defendant's act in violating the law "may have been the effect of lulling the mind into a sense of security". [See, also, Piper v. Chi. M. & St. P. R. Co., 77 Wisc., 247, 256.] There is no question but that plaintiff had the right to rely upon the obedience of the ordinance, to some extent,

even regardless of the peculiar facts and circumstances as related to the condition of the crossing, itself, and the load. [See Dutton v̇. K. C. Term. Ry. Ass'n., 316 Mo. 979; Pitcher v. Schoch, 345 Mo. 1185, 1192; Monroe v. Chi. & Alton R. R. Co., 280 Mo. 483, 495; Baker et al. v. K. C., Ft. Scott & Memphis R. R. Co., *supra*; Riska v. Union Depot R. Co., 180 Mo. 168, 188; Hutchinson v. Mo. Pac. Ry. Co., 161 Mo. 246, 254; Weller v. Chi. M. & St. P. Ry. Co., 164 Mo. 180, 199; Bluedorn v. Mo. Pac. Ry. Co., 108 Mo. 439, 449; Petty v. Hannibal & St. Jos. Ry. Co., 88 Mo. 306.]

There are many cases holding that where one's attention is diverted, while he is making an effort to cross a railroad track, it is for the jury to determine whether he has been guilty of contributory negligence in not looking for a train. In Taylor v. Alton R. Co., 148 S. W. (2d) 806, we said, l. c. 808: "The defendants contend plaintiff was guilty of contributory negligence as a matter of law. The argument supporting this insistence is that if plaintiff had looked to the west after starting to go upon the crossing he would have seen the train and could have hastened 'off the track by increasing the speed of his automobile if necessary to avoid collision.' *This overlooks the fact the condition of the crossing was such that plaintiff was required to carefully choose his way.*" (Italics ours.)

In Shepherd v. Bremner, 260 N. W. (Iowa) 48, 51, the court, in adjudging plaintiff not guilty of contributory negligence as a matter of law, took into consideration, among other things, that "There were holes in the road, especially where the ties of the old passing track had been taken out, and the truck, which was empty, was being bounced around by this condition of the roadway so as to require some attention from the passenger to keep his seat in the truck. There was a trench parallel with the railroad track and just outside the end of the ties which was some two feet deep and one foot wide and which had been filled in for a space just wide enough for a truck to pass. The proper negotiation of the passage over this road and across this trench is a matter which would quite naturally divert the attention to some extent".

"A traveler, especially when familiar with the crossing, must exercise care to make his observation effective, but it cannot always be said that he is guilty of contributory negligence as a matter of law because he looked and listened from one point rather than another, or because he did not continue to look and listen at all times continuously for approaching trains, *where he was misled by the company or his attention was rightfully directed to something else as well.* Thus, in a recent case, it is said: 'The law does not say how near the track a traveler shall make his observations. There is no arbitrary rule in this respect' ". [Elliott on Railroads (2 Ed.) p. 357.] (Italics ours.)

[See, also, Piper v. Ch. M. & St. P. R. Co., *supra*; Tex. & P. Ry. Co. v. White, 44 S. W. (2d) (Tex.) 780; Bonnell v Del. Lack. & West. R. Co., 39 N. J. L. 189; Kirby v. So. Pac. 216 Pac. (Ore.) 735; Wheeler v. Ore. R. & Nav. Co., 102 Pac. (Ida.) 347; Sarles v. Chi-M. & St. P. Ry. Co., 21 L. R. A. (N. S.) (Wisc.) 415; Provenzano v. Ill. Cent. R. R. Co., 263 Ill. App. 530; Moore v. Atl. Coast Line, 7 S. E. (2d) (S. C.) 4; Ala. Great So. R. R. Co. v. Cross, 7 S. E. (2d) (Ga.) 38; Murphy v. Great No. Ry. Co., 248 N. W. (Minn.) 715; Woolfe v. Chi. Great West. Ry. Co., 147 N. W. (Ia.) 901; Case v. Chi. reat West. Ry. Co., 126 N. W. (Ia) 1037; Coonley v. Lowden, *supra*.]

We think the facts in this case are so unlike those in the case of Herring v. Franklin et al., *supra*, as to render that case not a controlling authority here.

However, defendant insists that the driver of the truck should have stopped again; but where and how often is not suggested. It cannot be said, as a matter of law, that the driver should have stopped his truck a second time. [Rucker v. Alton R. Co., 123 S. W. (2d) 24; Monroe v. Chi. & Alton R. Co., *supra*; Masterson v. Chi. R. I. & Pac. Ry. Co., 58 Mo. App. 572, 576.]

The question of contributory negligence is for the jury when it arises upon a state of facts from which reasonable men might draw different conclusions either as to the facts or the conclusions or inferences to be drawn from the facts: [Weber v. Kansas City Cable R. Co., 100 Mo. 194; 38 Am. Jurisprudence, p. 1052, sec. 348.]

Recognizing the rule that "a demurrer to the evidence can be sustained only when the facts in evidence and the legitimate inferences therefrom are so strongly against the verdict as to leave no room for reasonable minds to differ, . . . Kick v. Franklin (Mo.), 117 S. W. (2d) 284-287, we conclude the trial court correctly overruled the demurrer.

Defendant next complains of error in admitting the testimony of the driver that the train was traveling at a rate of speed of at least 55 miles per hour. Such evidence was admitted under these circumstances. Adams testified that when he stopped within 30 feet of the main track and looked to the east there was no train within 750 feet of him, and that he immediately proceeded forward and that it was not more than ten seconds before he was struck while the truck was on the main track. The court permitted the witness to testify that he had calculated the rate of speed of the train in order for it to travel the distance of 750 feet in ten seconds, which was approximately 55 miles per hour.

Defendant urges that this testimony is speculative and without any proven facts to support it, because there is no evidence in the record where the train was at the time the driver started forward. There is no positive evidence that the train was not within 750 feet

.of the crossing and if it were still further away, then its speed would necessarily have been greater than 55 miles per hour in order for it to have reached the crossing and collided with the truck. It seems clear to us that there were certain undisputed facts from which there could be drawn but one conclusion or inference as to the minimum rate of speed of the train. With such undisputed facts in evidence, it was mere matter of calculation as to the minimum rate of speed. Facts necessary to sustain a recovery in a civil case may be proven by circumstantial evidence, but the facts and circumstances proven must be such that the necessary facts to support a verdict may be inferred and must reasonably follow. Such evidence must exclude guesswork, conjecture, and speculation as to the existence of the necessary facts. [Bates v. Brown Shoe Co., 116 S. W. (2d) 31-33; Lappin v. Prebe, 131 S. W. (2d) 511-513.] It is well settled that any number of inferences may be drawn in a given case so long as each has a factual foundation. [Van Brock v. First National Bank of St. Louis, 161 S. W. (2d) 258.] There was no error in admitting the evidence complained of.

Defendant complains of plaintiff's instruction No. 1, because there was no competent evidence of the rate of speed of the train and, therefore, no proof to support the instruction. What we have said above disposes of that contention.

It also contends that plaintiff's instruction No. 3 is erroneous because it ignores any question of contributory negligence of plaintiff's driver. This instruction submits to the jury the question of negligence of defendant in running its train in excess of the speed ordinance of 15 miles per hour. It authorizes a verdict for the plaintiff and against defendant upon a finding that defendant's train was so operated; and the further finding ''that as a direct and sole result of the aforesaid negligence, plaintiff's truck was struck and injured.''

As we have said, it was a question for the jury as to whether the driver should have looked again after starting his truck toward the main track. Therefore, contributory negligence was a question to be submitted. The defendant offered no instructions except its demurrer. Can it be said that the above quoted clause in this instruction submits the question of contributory negligence? We think not.

Plaintiff seeks to escape this alleged error by contending first, that the instruction does not purport to cover the whole case. We cannot agree. Instruction 3 covers the whole case in so far as negligence for violation of the speed ordinance is concerned and directs a verdict for plaintiff on that ''sole ground''. Such ground being founded on primary negligence, contributory negligence would be a defense and should not be ignored by the instruction. The second contention is that the instruction did require the jury to find that the damages were not caused by the driver's contributory negligence

because it required the jury to find that defendant's negligence *directly and solely caused the damages*. We do not believe the jury would so understand the instruction. We observe that none of plaintiff's instructions requires the jury to find that the driver was in the exercise of due care. He, being the operator of a motor vehicle on the highway, was required to use the highest degree of care, and if he failed to do so his negligence would defeat the plaintiff's claim. But none of the instructions advised the jury of that fact. The quoted clause relied on by plaintiff will not supply the deficiency. It is too general, indefinite and uncertain to exclude the question of the driver's contributory negligence. Plaintiff's third contention is that there was no need for the instruction to submit the question of contributory negligence because there was no evidence to support it. Of course if there was no evidence of contributory negligence, then there would be no need to submit that issue; but we have held above that there was sufficient evidence to raise the issue of contributory negligence and, therefore, plaintiff's instruction should not have ignored it.

For cases discussing the various branches of this question, we would refer the reader to Cuddy v. Shell Petroleum Corporation, 127 S. W. (2d) 24-30, which opinion of the St. Louis Court of Appeals was approved by the Supreme Court En Banc in State ex rel. v. Hostetter, 348 Mo. 841, 156 S. W. (2d) 673; State ex rel. Long v. Ellison, 272 Mo. 571-583; Macklin v. Fogel Construction Company, 326 Mo. 38-49, 31 S. W. (2d) 14-19; Blackwell v. Union Pacific R. Co., 331 Mo. 34-42, 52 S. W. (2d) 814-817.

For the error assigned, the judgment must be reversed and the cause remanded. It is so ordered. All concur.