HOWARD DOYEL, Administrator of the Estate of BENJAMIN L. DOYEL, Deceased, v. FRANK A. THOMPSON, Trustee of ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, Appellant.—No. 40442.—211 S. W. (2d) 704.

Division Two, May 27, 1948.

964

*M. G. Roberts, Frank C. Mann, C. Wallace Walter* and *Mann & Mann* for appellant.

*Claude T. Wood, John F. Low* and *Bradshaw & Fields* for respondent.

[705] BOHLING, C.—Frank A. Thompson, as trustee of the St. Louis-San Francisco Railway Company, prosecutes this appeal from

a judgment of $8,500 under the penalty section (Sec. 3652*), for the alleged wrongful death of Benjamin L. Doyel as the result of an automobile-train grade crossing collision, in favor of Howard Doyel, as administrator of the estate of said decedent. Plaintiff's action was submitted solely on defendant's failure to give the warning required by Sec. 5213, and defendant concedes plaintiff made a submissible case thereunder. Defendant contends that contributory negligence as a matter of law precludes a recovery by plaintiff, and that the verdict is so excessive as to establish passion and prejudice and should not be permitted to stand. Plaintiff was the operator of the automobile, is the sole and only heir of the decedent, and his trial theory was that his contributory negligence would bar a recovery, his verdict directing instruction being conditioned upon a finding that both he and decedent had exercised the highest degree of care for their own safety. The issues are presented on their merits.

Howard Doyel, plaintiff here, and Benjamin L. Doyel, his father, operated a 152 acre farm one mile east of Crocker, Missouri. They were both single, Mrs. Doyel having died prior to the occurrence. The father was 65 and the son 32 years of age at the time. On December 7, 1944, soon after 7:00 P. M. the two started to Crocker to attend church services, Howard driving a 1937 six cylinder Pontiac coupe. Plaintiff described the weather as being "cloudy and dark, damp and a little foggy" and fireman Rommelman said it was "misty and damp," with "some fog," and a wind from the northwest.

The highway, a county road, runs east and west and crosses defendant's right-of-way, which extends north and south, on a right angle grade crossing, known as Bell's [706] creek crossing. Defendant railroad has three tracks at this crossing, which is 846 feet south of the station. The station is west of the tracks. The west track is the main line track. The passing track is 8 feet 6 inches east of the main line track and the switch track is 7 feet 11 inches east of the passing track. The width of the tracks is 4 feet 11 inches. The switch track is 7 or 8 inches lower than the main line track. North of the highway and east of the tracks, at the northeast corner of the intersection, are some stock pens, extending approximately 60 feet east and west and 40 feet north and south, the loading chute being near the northwest corner of the pens. The southwest corner of the stock pens is 9 feet 7 inches east of the switch track and about 24 feet north of the center of the road. North of the stock pens were some oil storage tanks. On the switch track were three or more boxcars or cattle cars, the south end of the south boxcar being about even with or farther south than the south corner of the stock pen,

---

*Statutory citations are to Missouri Revised Statutes 1939 and Missouri Revised Statutes Annotated.

and the car had an overhang of 2 feet beyond the rails. The stock pens, oil storage tanks and, especially, the railroad cars made it so one could not see north along the track until his line of vision cleared the south boxcar.

Howard Doyel and his father proceeded westward over the highway. The road was uphill as one approached the crossing for about a quarter of a mile and a short distance east of the crossing, about 50 yards, was a rough place, a mudhole. The headlights of the coupe were on. Plaintiff testified that as they approached the crossing he was looking west but he did not see any locomotive headlight shining on the crossing. He stopped the coupe when 2 or 3 steps, 6 to 9 feet, east of the east rail of the switch track. The radio was not on and he and his father were not talking at the time. He put the glass in the car door down that he might listen. He was familiar with the crossing, having lived in the neighborhood six years. He heard no bell or whistle and saw nothing that indicated any train was approaching. He rolled up the glass in the door, put the car in "low gear" and started across the track. Recalling that a car had stalled on the crossing shortly before he shifted to second gear while on the switch track to prevent stalling on the crossing and estimated this increase his speed to ten miles an hour. He first saw the headlight of the train (he was looking into the headlight and never saw the train) as he came out from behind the boxcar and when the front of his coupe was in the middle of the passing track. According to his best judgment, plaintiff placed the train in the neighborhoood of the tool house, approximately between 133 feet and 165 feet north of the center of the highway. He realized the train was approaching. He thought the train was on the passing track, but "couldn't tell for sure"; "looked like it was in line with me directly"; "I thought it was coming right straight at me" and he pushed down on the "gas" as far as he could He thought he could get out of the way quicker by going forward than he could by applying the brakes, stopping, shifting into reverse and backing off the track. The train, however, was on the main (west) track instead of the passing track. Plaintiff testified the train was coming very fast, say 40 to 50 miles an hour, and it could not have been more than a second or two until the very back end, about the rear wheel, of the coupe was struck just as it was clearing the main track.

Benjamin L. Doyel died on December 11, 1944, of injuries received in the collision.

Fireman J. A. Rommelman testified on behalf of defendant that, with the wind from the northwest, the steam and smoke from the engine and the fog shut off his view and he did not see the crossing, the coupe, or the reflection of its headlights or the headlight of the locomotive ahead of the train; and that, as far as his seeing was concerned, they were "running blind" through Crocker.

Engineer Harold Adams testified for defendant that the train was moving 20 miles an hour at the depot, and 15 to 17 miles an hour at the crossing; that the first he knew of the automobile was when it came off the front of the engine, and he saw its headlights after it was struck. Witness said as the locomotive approached nearer to a specific point on the right-of-way the locomotive boiler obstructed his view to the south. [707] He testified that the crossing was "dark" as the train approached; and that the locomotive headlight would keep him from seeing the reflection of the automobile headlights on the crossing because the locomotive headlight would drown out the car headlights.

■ Defendant contends plaintiff was contributorily negligent as a matter of law because he failed to have his automobile under control and to stop, look, and listen at a time and place where he would have avoided the collision. The law places the duty on all operators of motor vehicles to exercise the highest degree of care of an average competent motorist. Sec. 8383; Borgstede v. Waldbauer, 337 Mo. 1205, 1210, 88 S. W. 2d 373, 374[4, 5]; Monroe v. Chicago & A. Rd. Co., 297 Mo. 633, 654(VII), 249 S. W. 644, 650 [8]; Fitzpatrick v. Kansas City So. Ry. Co., 347 Mo. 57, 70, 146 S. W. 2d 560, 567[7]. A failure of defendant to discharge a duty does not relieve a plaintiff; but if plaintiff exercises due care for his own safety he may assume that others are obeying the law until given cause to think otherwise. Nichols v. Chicago & A. Rd. Co. (Mo. App.), 250 S. W. 627, 628[2]; Dempsey v. Horton, 337 Mo. 379, 388, 84 S. W. 2d 621, 626[5], and cases infra. Having discharged his duty by stopping, looking and listening for an approaching train at a reasonable place for that purpose and where under the evidence statutory warning signals would have been effectually audible if given, plaintiff was entitled to assume that if a train were approaching he would have heard the statutory warning; and the fact that plaintiff did not stop, look, and listen a second time or did not get out of his coupe and go forward to reconnoiter prior to his actual discovery of the approaching train cannot be said to constitute contributory negligence as a matter of law in the circumstances of record here. Crumpley v. Hannibal & St. J. Ry. Co., 111 Mo. 152, 158, 19 S. W. 820(1); Nicholas v. Chicago, B. & Q. Rd. Co. (Mo. App.), 188 S. W. 2d 511, 516[10]; Advance Transfer Co. v. Chicago, R. I. & P. Ry. Co. (Mo. App.), 195 S. W. 566, 568[5]; Stepp v. St. Louis-S. F. Ry. Co. (Mo. App.), 211 S. W. 730, 733[3]; Bryce v. Payne (Mo. App.), 263 S. W. 1005, 1007[1]; Swigart v. Lusk, 196 Mo. App. 471, 479 et seq., 192 S. W. 138, 141[7, 9-11]; Dobson v. St. Louis-S. F. Ry. Co., 223 Mo. App. 812, 819, 823-824, 10 S. W. 2d 528, 530[2, 6, 9]; Pokora v. Wabash Ry. Co., 292 U. S. 98, 101, 104, 54 S. Ct. 580, 78 L. Ed. 1149, citing the Dodson case with approval. The instant facts are more favorable to a plaintiff than the facts in Monroe v. Chicago & A. Rd. Co., 280 Mo. 483,

490(VII), 219 S. W. 68, 69 (VII), which reached a like conclusion, and are wholly unlike the facts on the issue in the Monroe case on second appeal, 297 Mo. 633, 652(V, VII, VIII), 249 S. W. 644, 649 [6, 8, 9], 257 S. W. 469. Consult Donohue v. St. Louis, I. M. & So. Ry. Co., 91 Mo. 357, 363, 2 S. W. 424, 426, 3 S. W. 848. In defendant's cases the plaintiffs considered guilty of contributory negligence as a matter of law did not stop, look, and listen for the approaching train. Borrson v. Missouri-K.-T. Rd. Co., 351 Mo. 229, 242, 248, 172 S. W. 2d 835, 844, 848; Scott v. Kurn, 343 Mo. 1210, 1214, 126 S. W. 2d 185, 186, 187; Dickey v. Wabash Ry. Co. (Mo. App.), 251 S. W. 112, 113; Stevens v. Thompson (Mo. App.), 175 S. W. 2d 166, 169.

■ Defendant argues that plaintiff is chargeable with seeing the rays of the locomotive headlight as he approached the crossing. Plaintiff saw no reflection of the locomotive headlight prior to discovering the train On the other hand, the enginemen did not see any reflection from the automobile headlights. The engineer's view was unobstructed. The automobile was much nearer the crossing than the locomotive and its lights were shining across the crossing while the train was quite a distance away, yet the engineer described the crossing as "dark." He testified that he saw no reflection because the locomotive headlight tended to drown out the automobile lights; that the locomotive headlight did not throw a bright light clear across the three tracks; "Q. Well, light enough to see an automobile, wouldn't it? A. Well, I would say no, not with the headlights on an automobile shining"; but that he could see an automobile come onto the switch track when he was 260 to 390 feet north when the view was unobstructed. Plaintiff had evidence that when beams of light intersect at right angles each beam cuts the [708] other so as to diffuse it and causes one behind either beam to have a tendency to see or be conscious only of that particular beam; and that in the the circumstances the automobile headlights would tend to cut out a locomotive headlight which was 150 feet from the crossing. There was evidence describing the weather as cloudy, misty, and foggy. The evidence did not establish that the locomotive headlight was on bright. The Interstate Commerce Commission requires the headlight on road locomotives to be equipped with dimmers to diminish the light in yards, at stations, or when meeting trains. 49 Code of Federal Regulations 91.231(c); 2 Roberts, Federal Liability of Carriers (2d Ed.), 2063, Rule 129; Smith v. Thompson (Mo.), 182 S. W. 2d 63, 66[2]. We think plaintiff's testimony that he did not see the reflection of the locomotive headlight is not so opposed to the physical facts as to be wholly unbelievable and convict him of contributory negligence as a matter of law.

■ Plaintiff saw the locomotive headlight when the front of the coupe was in the middle of the passing track. The coupe was about

16 feet long and the front of the driver's seat was 8 feet 3 inches back of the front of the coupe. Plaintiff was approximately on a north-south line with the west side of the boxcar on the switch track when he realized a train was approaching; and with the automobile traveling 14-2/3 feet a second, he discovered the approaching train within between one to two-fifths of a second of the time when he had his first possibility of seeing the locomotive headlight. We may not say as a matter of law that he was negligent in not seeing it sooner, or that, had he noticed a reflection of the locomotive headlight, he could not assume that the train had stopped until he had reasonable cause to think otherwise, as the statutory warning signals were not sounding.

■ Plaintiff placed the speed of the train at 40 to 50 miles an hour. Defendant says this was an impossible speed, basing the conclusion upon the testimony of the crew to the effect that only the engine and about five cars of the 67 car train passed the crossing before the train was stopped. Plaintiff did not know where the train stopped. He testified that witness Hock arrived within three or four minutes after the accident occurred and while plaintiff was still in the coupe. This witness, although he did not see the accident, testified that the whole of the train, including the caboose, was south of the crossing when he arrived. Aside from defendant having the burden of establishing contributory negligence, there was affirmative testimony contradicting the conclusion advanced by defendant.

■ Plaintiff testified he saw the headlight, not the train; he could not tell which track it was on; he thought it was coming straight at him; he knew it was on him and he had to get out of the way. The front end of plaintiff's coupe had to move westward approximately 32 feet to clear a train on the main line track. Plaintiff, thinking the train was on the middle track, occupied in part by the coupe at that instant, pressed down on the "gas," instead of stopping, changing gears, and backing off; and testified that the accident happened in about two seconds. There was testimony that the passing track was used by fast trains at times and plaintiff testified he did not learn until after the accident which was the main track and which was the passing track. The train was on the main (the west) track. Defendant contends plaintiff was contributorily negligent as a matter of law in not ascertaining that the train was on the main track and stopping his coupe instead of pressing on the "gas" to go forward to avoid injury. With the front of the coupe in the middle of the passing track, it was approximately 9 feet from where the overhang of the train would be south of the main track as it passed over the crossing. The coupe was traveling 14-2/3 feet a second and was approximately two-thirds of a second from a point where it would be struck if the attempt to stop failed. If the coupe could be stopped safely, another question of fact, plaintiff had no time or space to

spare. He was confronted with an emergency, not of his own making, requiring immediate action under excitement and peril. All these factors are to be considered in ruling on his conduct.... Where an emergency exists requiring sudden action, one is not necessarily negligent in failing to exercise what after calm deliberation appears to be [709] the better judgment. Gorman v. St. Louis Merch. Br. Term. Ry. Co., 325 Mo. 326, 332(I), 28 S. W. 2d 1023, 1024[3, 4]; Hatten v. Chicago, B. & Q. Rd. Co. (Mo. App.), 233 S. W. 281, 282 [3]; Hutchison v. St. Louis-S. F. Ry. Co., 335 Mo. 82, 95[4], 72 S. W. 2d 87, 92[9]; Clark v. Atchison & E. Br. Co., 324 Mo. 544, 562, 24 S. W. 2d 143, 152[11, 12]; Stack v. General Bkg. Co., 283 Mo. 396, 413(III), 223 S. W. 89, 94[12]; Swigart v. Lusk, 196 Mo. App. 471, 480, 192 S. W. 138, 141[8]; Carter v. Wabash Rd. Co., 193 Mo. App. 223, 233, 182 S. W. 1061, 1063[3]. A jury could reasonably find that plaintiff discharged his primary duty when he stopped, looked, and listened and, neither seeing nor hearing a train, rightfully proceeded to cross defendant's tracks; that in the circumstances he thereafter made due discovery of the approaching train, and that his only opportunity to avoid injury thereafter was to clear the crossing ahead of the train.

■ Defendant claims the amount of the verdict establishes passion and prejudice against defendant and in favor of plaintiff to such an extent that it should be set aside even under the penalty statute. Sec. 3652. Defendant argues that there are no aggravating circumstances in the case and no evidence showing any pecuniary loss from the father's death. The father left no widow or minor child. Plaintiff owned the farm, live stock, machinery et cetera. He and his father, aged 32 and 65, respectively, did all the work and batched. The father was in good health and did many things at the farm but could not operate a tractor or do work that required "close looking" because of an eye condition. Defendant cites Grier v. Kansas City, C. C. & St. J. Ry. Co., 286 Mo. 523, 538, 228 S. W. 454, 458[5]; Gaston v. St. Louis Pub. Serv. Co., 223 Mo. App. 766, 771, 20 S. W. 2d 559, 560[1]; Cummins v. Kansas City Pub. Serv. Co., 334 Mo. 672, 681[4], 66 S. W. (2d) 920, 924[5]. Section 3652 provides that defendants within the statute "shall forfeit and pay as a penalty, for every such person . . . so dying, the sum of not less than two thousand dollars, and not exceeding ten thousand dollars, in the discretion of the jury . . . " In the Grier case the deceased was unmarried and had no dependents; and the court, having pointed out the object of the statute "was primarily to punish, and secondarily or incidentally to afford compensation" (supra) sustained a verdict of $10,000, the maximum under statute, on account of the gross negligence of defendant's motorman (286 Mo. l. c. 544, 228 S. W. l. c. 460[9]). Consult also Wallace v. Woods, 340 Mo. 452, 460, 465, 466, 102 S. W. 2d 91, 94, 97[14], where deceased was a

bachelor with "no one depending on him" and where no pecuniary loss could be established on account of his death. In the instant case plaintiff and a half dozen or more witnesses testified that defendant omitted the statutory warnings for the crossing, there being neither bell nor whistle. Plaintiff was approaching from the fireman's side of the train. He testified he could not see the crossing until after the collision. The engineer testified the crossing was "dark." The train was running through the town "blind" with respect to the approach of this automobile. We do not agree with defendant's statement to the effect the record warrants no finding that plaintiff suffered a pecuniary loss. The jury did not award the full penalty. The point is disallowed.

The judgment is affirmed. *Westhues* and *Barrett, CC.*, concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. *Leedy, J.*, and *Tipton, P. J.*, concur; *Ellison, J.*, concurs in results.