## THRELKELD v. WABASH R. CO.

### No. 43676.

Supreme Court of Missouri, Division No. 1.

July 12, 1954.

C. M. Hulen, Moberly, for plaintiff and appellant.

J. H. Miller, St. Louis, Hunter, Chamier & Motley, Moberly, for defendant and respondent.

HYDE, Judge.

Action for $10,000 damages for personal injuries sustained when the truck plaintiff was driving was struck by defendant's train. The trial court directed a verdict for defendant and plaintiff has appealed from the judgment entered thereon. The sole question presented is whether plaintiff's evidence showed that he was guilty of contributory negligence as a matter of law, as the trial court held.

Plaintiff was a truck driver for a lumber company in Moberly and on the morning of the casualty was in its yard west of the railroad where lumber was being loaded in the truck he was to drive. Plaintiff could see a passenger train, bound for St. Louis, standing at the Moberly station; and as he walked to the front of the truck to get in the cab he could see the red flasher lights operating on the automatic signal at the railroad crossing about half a block east of the lumber yard. He got into the truck, turned to the right and drove east on Wightman Street to the crossing. He saw the flasher lights continue to operate but believed they were being operated for the St. Louis bound train and was struck on the crossing by a train coming from the south, called the City of Kansas City. Plaintiff alleged, as negligence of defendant, operating the train at a high and dangerous speed and at a speed in violation of ordinances of Moberly; and failure to blow the whistle, ring the bell or give a timely and adequate warning. For the purpose of passing upon the correctness of the action of the trial court, we will consider that plaintiff had substantial evidence of all of these charges of negligence.

As plaintiff drove from the lumber yard to the crossing, he had to pass defendant's freight station, on the south side of the street on which he was traveling east, before he came to the railroad tracks. On the east side of the freight station there was a loading dock which did not extend to the north end of the station and next to this dock was a boxcar, the north end of which did not extend to the north end of the loading dock. (These facts are shown by a photograph, offered in evidence by plaintiff, taken on the day of the casualty before the overturned truck was moved.) This loading dock track, described as a stub track, did not extend north to the street. However, east of it there was a track, called the auxiliary track, which did cross the street and east of it was the mainline track, upon which the Kansas City bound train operated, which also crossed the street. The flasher lights were on big up-

right poles east of the auxiliary track about even with the east side of the boxcar on the loading dock track. It was 13 feet 3 inches (plaintiff's estimate was 12 feet) from the west rail of the mainline track to the west rail of the auxiliary track. Plaintiff thought the west side of the boxcar on the loading dock track was about four feet from the auxiliary track. There was a sidewalk on the south side of the street along the north side of the freight station. Between this sidewalk and the paved portion of the street on which plaintiff was traveling, there was a space used for parking, which (as shown by plaintiff's photograph) was wide enough to park automobiles standing north and south. Plaintiff was an experienced truck driver and said that he had crossed that crossing from one to fifteen times a day during the time he had been working for the Lumber Company.

Plaintiff said as he came to the crossing he was driving five or six feet north of the curb of the paved part of the street; that he stopped with the front end of the truck about 10 feet from the west rail of the auxiliary track; that his seat was about 9 feet back from the front bumper so that he was 19 feet from the rail; that he estimated he was 13 or 14 feet west of the east side of the boxcar and that this was 32 feet west of the west rail of the mainline. From that point he could not see much of the mainline because of the boxcar. How much is in dispute (because of various different estimates in plaintiff's testimony as to the distance of the boxcar from the street) but, because of the view we take, how far he could see at that point makes no difference in our ruling. (However, plaintiff's photograph shows that some of his shorter estimates as to the distance between him and the boxcar could not be correct.) Plaintiff started in low gear and proceeded on to the mainline at a speed of about five miles per hour. He said as he stopped he looked to the left (north) then to the right (south); that as he started he saw a switchman at the crossing waving; that "at that time he drawed my attention to him and as I looked to the right I was going past the boxcar and when I got past

the boxcar I had no time to stop"; and that "when I looked back to the right after I got past the car the City of Kansas City was coming." The engine struck the truck at the door of the cab.

Plaintiff, claiming that contributory negligence was for the jury, cites Hathaway v. Evans, Mo.App., 235 S.W.2d 407; Mullis v. Thompson, 358 Mo. 230, 213 S.W.2d 941; Doyel v. Thompson, 357 Mo. 963, 211 S.W. 2d 704; Jackson v. St. Louis-San Francisco Ry. Co., 357 Mo. 998, 211 S.W.2d 931; Nicholas v. Chicago, B. & Q. Ry. Co., 239 Mo.App. 421, 188 S.W.2d 511; Leavell v. Thompson, 238 Mo.App. 130, 176 S.W.2d 854; Williams v. Thompson, Mo.App., 166 S.W.2d 785; Sisk v. Chicago, B. & Q. Ry. Co., Mo.App., 67 S.W.2d 830, loc. cit. 835; Dobson v. St. Louis-San Francisco Ry. Co., 223 Mo.App. 812, 10 S.W.2d 528; Bluedorn v. Missouri Pacific Railroad Co., 108 Mo. 439, 18 S.W. 1103. Plaintiff especially emphasizes Doyel v. Thompson, supra, and says "that the facts in the instant case fall clearly within the rule laid down in the Doyel case and which make the issue of contributory negligence one for the jury." In the Doyel case, the collision occurred on a misty, damp, foggy night and it could have been inferred that the engine headlight dimmers were on so that the headlight was not bright. The road near the crossing was rough with a mudhole in it. The plaintiff was not able to determine which track the train was on and acting in this emergency situation speeded up to get across, instead of stopping and backing, and did almost escape. In the present case, plaintiff was on a paved street at 11:30 A.M. on a clear day and a dry street. However, the greatest difference was that there were no signal lights flashing, warning of the approach of the train. In Mullis v. Thompson, supra, the plaintiff attempted to cross tracks, guarded by an automatic signal, after looking at the signal lights and seeing they were not in operation. We said "the flasher signal device, if unlit, was implicit assurance that the crossing could be made in safety." See 213 S.W.2d loc. cit. 944 and cases there cited. The exact opposite is true under the facts of this case. The

other cases cited by plaintiff likewise present very different fact situations (several of them involved conditions of snow and ice) and in none of them did the plaintiff completely disregard such a known and obvious warning as in this case.

In one case, in which plaintiff's witnesses testified an automatic crossing signal was working although plaintiff said he did not see it, we said: "Then in the face of the ringing alarm bell and the swinging wig-wag, he drove on the tracks without looking south until his front wheels were on the track upon which the passenger train was approaching. Failure to see what was plainly visible (according to plaintiff's own witnesses) before his eyes, and to hear what others heard (or to heed it if he did), is conclusive evidence of plaintiff's negligence." Poague v. Kurn, 346 Mo. 153, 140 S.W.2d 13, 16. In that case there was a slowly moving train that plaintiff saw and another approaching from the south struck his automobile on the crossing. We think it was even more negligent to drive on to a track in this case with full knowledge and understanding that the automatic signal was operating than under the circumstances of the Poague case.

Plaintiff certainly did not exercise the required degree of care, See State ex rel. Kurn v. Hughes, 348 Mo. 177, 153 S.W.2d 46; Rhineberger v. Thompson, 356 Mo. 520, 202 S.W.2d 64, in stopping only where his view was obstructed. See also Rischeck v. Lowden, 347 Mo. 426, 147 S.W.2d 650; Scott v. Kurn, 343 Mo. 1210, 126 S.W.2d 185; State ex rel. Kansas City Southern R. Co. v. Shain, 340 Mo. 1195, 105 S.W.2d 915; Monroe v. Chicago & Alton R. Co., 297 Mo. 633, 249 S.W. 644, 257 S.W. 469; Kelsay v. Missouri Pacific R. Co., 129 Mo. 362, 30 S.W. 339. Plaintiff admitted he could have seen what was shown in the photograph, defendant's exhibit 5 (including several hundred feet of the mainline), when he reached the east edge of the boxcar on the loading dock track. It is obvious, if he had stopped when he reached that point, no part of his truck would have been on or dangerously near the mainline track and he would have had a full view of the approaching passenger train. It is also obvious either that he did not look at the time he passed that point or if he did he did not look carefully, but negligently, because the train was there clearly visible from that point. We must hold that his failure to look at that point before proceeding on to the mainline track, in view of the warning he knew as being given him by the flashing lights, was negligence as a matter of law which directly contributed to his injuries. If his view was obstructed where he stopped to the extent he claimed that made his negligence even greater in going on to the track in disregard of the warning given him by the flashing lights. Plaintiff's further argument that he was entitled to assume that an approaching train would not exceed the speed prohibited by the ordinances of the City of Moberly (or would give the statutory warnings that he could hear) could make no difference in this case because plaintiff was negligent as a matter of law in completely disregarding the warning he was receiving from the flashing lights and going on to the mainline track, in the face of such warning, without stopping and looking at a place where he could see what was approaching on the mainline track. It was clearly negligent to assume without looking that the flashing lights were only operating because a train was standing at the station and did not mean a train was approaching from the south on the mainline track. The matter was correctly ruled by the trial court.

The judgment is affirmed.

All concur.