Liel W. SHORT and Katie A. Short, Co-Administrators of the Estate of Merl Lee Short, Deceased, Appellants,

v.

MISSOURI–KANSAS–TEXAS RAILROAD COMPANY, a Corporation, and Missouri Pacific Railroad Company, a Corporation, Respondents.

No. 46037.

Supreme Court of Missouri, Division No. 2.

March 10, 1958.

Motion for Rehearing or for Transfer to Court en Banc Denied April 14, 1958.

Donald B. Russell, Jack P. Pritchard, James E. Woodfill, Nevada, for appellants.

A. E. Elliott, Nevada, for respondent, Missouri, K. & T. R. Co.

Harold L. Harvey, St. Louis, Johnson, Lucas, Bush & Gibson, Fred A. Murdock, Hilary A. Bush, William A. Cameron, Kansas City, for respondent, Missouri Pac. R. Co.

BOHLING, Commissioner.

Liel W. Short and Katie A. Short, Co-administrators of the estate of Merl Lee Short, deceased, their son, sued the Missouri-Kansas-Texas Railroad Company and the Missouri Pacific Railroad Company, corporations, for the death of Merl occasioned by a northbound Missouri-Kansas-Texas fast freight striking Merl's westbound automobile when he attempted to cross the tracks of said defendants upon a switching movement of the Missouri Pacific clearing the crossing at Hickory street in the city of Nevada, Missouri, at 2:20 a. m., May 16, 1954. Plaintiffs submitted their case against both defendants on grounds of primary negligence, as stated by plaintiffs,

in that (a) the crossing was unusually dangerous and extraordinarily hazardous and both defendants negligently failed to protect the crossing with a watchman, flagman, signal light, bell, wig-wag, gates or other appliance giving reasonable warning of the approach of trains; and (b) that both defendants failed to warn of the approach of said train at the crossing—the Missouri Pacific not flagging the crossing, and Missouri-Kansas-Texas not sounding a warning by bell or whistle for the crossing. Consult Guthrie v. City of St. Charles, 347 Mo. 1175, 152 S.W.2d 91, 95 [4, 5]; Bean v. St. Louis Pub. Serv. Co., Mo.App., 233 S.W.2d 782, 785 [3]. Plaintiffs had a nine-juror verdict for $12,000. Each defendant filed a motion to set aside the verdict and for judgment in accordance with its motion for a directed verdict and a motion for new trial. The court sustained said motions for judgment, set aside the verdict and judgment, and entered judgment for each defendant on the ground Merl Lee Short was contributorily negligent as a matter of law. The court did not rule the motions for a new trial. See Hughes v. St. Louis Nat. League Baseball Club, 359 Mo. 993, 224 S.W.2d 989, 991 [3], 16 A.L.R.2d 904. An important issue on plaintiffs' appeal is whether Merl Lee Short was contributorily negligent as a matter of law.

There are two sets of tracks crossing Hickory street in the vicinity of the collision. Defendants operated over and maintained these tracks under a written agreement providing, among other things, for the installation and maintenance of proper signaling devices for the protection of their tracks and the division of the expenses incurred. As shown on a diagram introduced in evidence by plaintiffs, one proceeding westwardly on Hickory street first encounters a set of four tracks, the first three being designated as "rip" tracks and the fourth as a "wrecker" track. The second set of tracks are, first, an "in- and outbound" track, then, in order, a "drill" track, the Missouri Pacific main line, the Missouri-Kansas-Texas main line, a "pit" track, and the "L & S" track. The distances between the centers of the tracks along the center of Hickory street, proceeding from the easternmost "rip" track, are, stated to the nearest foot, 24, 18, 26, 164, 8, 14, 14, 23 and 57 feet.

The usual cross-arm warning for highway travelers was maintained at the crossing, the warning for westbound traffic showing "Railroad crossing" and underneath "10 tracks." A watchman was at the crossing in the daytime but went off duty at 5:00 p. m. The crossing was not protected by a signal light, bell, wig-wag or gates.

Hickory street is 50 feet wide, with a black top pavement for the traveled portion. Defendants maintain a signal bridge 72 feet south of the center of Hickory street, and a tower 418 feet north of the center of Hickory street. The leverman in the tower operates the train signals at the signal bridge and tower.

Merl lived with his parents. He was 23 years of age at the time of his death, had good eyesight and hearing, and was perfectly sound. His father had a blacksmith shop at Bronaugh, a few miles south and west of Nevada. Merl was a good blacksmith and a good electric welder.

Merl was discharged from the Army May 8, 1954, after serving approximately two years. After the evening meal on Saturday, May 15, 1954, he drove his 1941 V-8 Ford coach to Nevada. The Ford was approximately 16 feet long, and from the front bumper to the rear of the front seat was approximately 8 feet. Dallas Claflin, who lived near Bronaugh, and Merl met at "Phil's Barbecue" in Nevada, approximately a block north of Hickory street and two or more blocks east of the crossing involved. They visited several places of amusement and returned to "Phil's" about 12:00 p. m., remaining there until a little after 2:00 a. m. Sunday, when the place closed. Each had his own automobile. Claflin was a little ahead of Merl when they left "Phil's." They drove to Hickory street and turned west thereon.

The weather was clear, the road was dry, and the crossing was artificially lighted by an electric street light a few feet east of the west set of tracks.

At this time Missouri-Kansas-Texas northbound fast freight No. 72, consisting of 85 cars, with a tonnage of about 3,144 tons, and four Diesel engines, being over-all about three-fourths of a mile long, was approaching the crossing on the Missouri-Kansas-Texas main line track. It was two hours late at Nevada. A Missouri Pacific switching crew was making up train No. 290, a local freight, east of the main line tracks and south of Hickory street. This necessitated switching movements over the Hickory street crossing and a Diesel switch engine with headlights at its front and rear and cars coupled to its south end was north of the crossing on the drill track and blocking the crossing.

Chief of Police Darrell Estes, Jr. of Nevada, driving, and two officers were on patrol duty. Officer David Phillips occupied the rear seat of the police car. The other officer did not testify. Estes and Phillips, plaintiffs' witnesses, testified they noticed the two automobiles leave Phil's Barbecue, proceed south and turn west on Hickory street. The officers also proceeded south and turned west on Hickory street. Plaintiffs' witness Raymond Dean, head switchman of the switching crew, was about 30 feet south of the crossing and east of the cars being switched. Dean and Estes heard a train whistle a short time before the accident. Dean testified the whistle was several blocks south of Hickory street. Plaintiffs' witnesses testified the Diesel switch engine was making considerable noise accelerating to start and while backing the cars south. Dean did not hear any warning by bell or whistle from the train for the Hickory street crossing. Estes and Phillips testified to like effect.

Officer Estes testified one of the automobiles passed the other on Hickory street. He and Phillips testified that both automobiles stopped for the switching movement to clear the crossing. Dean testified he saw a stopped automobile several feet east of the in- and outbound track. He then watched his foreman south of him for signals and did not see the automobile start up or at any time thereafter before the train struck it.

The switch engine backed the cars to the south and cleared the crossing. Estes and Phillips testified that when the switch engine was about 40 to 50 feet south of the crossing the two automobiles started forward; that the police car was a block or a block and a half east of the west set of tracks; and that the switch engine and cars kept them from seeing the Missouri-Kansas-Texas train until the collision occurred. After the collision the second automobile parked east of the tracks and the police car parked behind it. The officers did not find out who was in the other automobile.

Dallas Claflin was in the other automobile. Called by the Missouri-Kansas-Texas, he testified that he stopped east of the west set of tracks; that the cars blocking the crossing were backing, moving south; that he saw the light from the freight train underneath these cars as it approached the crossing, and that while he was stopped, Merl passed him, and: "Q. Did he stop or do you know? A. I don't know. I wasn't watching him." He stated the first thing he remembered after the accident, he was going under a viaduct several blocks away.

Engineer Thomas E. Phillips, fireman Charles V. Perry and head brakeman Charles A. Harris of train No. 72 testified the engineer sounded the regular crossing whistle for the Hickory street and other crossings. They put the speed of the train at about 20 m. p. h. The speed recorder tape of the Diesel engine showed that the train had been traveling at 23 m. p. h. for 1500 to 1700 feet before the collision. They saw the Missouri Pacific switch engine and cars on the drill track blocking the crossing. Signals at the signal bridge and the tower showed that the train had a clear

track and was to proceed but had train orders to pick up at the tower. The tower was east of the track and the fireman passed over to the engineer's side of the cab to catch the orders as the engine passed the tower. The engineer and fireman saw automobile lights shine across the intersection as the switch engine, backing the cars, cleared the crossing. The fireman was hanging out of the east window of the cab getting ready to take the orders at the tower, and when about 90 to 100 feet south of the crossing saw the automobile coming across the track the switch engine was on and called to the engineer "Big hole," which meant to make an emergency stop. The engineer testified the emergency brakes were applied about 50 feet south of the crossing.

The engine struck the center of the left side of the Ford, pushed it north along the track, bent it around the engine, and stopped 509 feet from the point of impact, which was 30 feet and 9 inches north of the south curb of Hickory street.

The only testimony of record on stopping distances for the train was given by defendants' witness T. B. Nelson, Jr., superintendent of air equipment and Diesel operations for the Missouri-Kansas-Texas. He testified the emergency stopping distance for this train at 23 m. p. h. would be 598 feet and at 25 m. p. h. would be 686 feet.

Merl expired before he was removed from the automobile.

C. Gordon Ewing, the civil engineer who prepared plaintiffs' diagram of the tracks at the crossing, testified that the two main line tracks and the drill track parallel each other for some distance south of Hickory street. Plaintiffs' aerial photographs disclose that said tracks parallel each other and extend southwesterly and northeasterly, practically north and south, for two blocks or more south of Hickory street. Witness Ewing gave it as his opinion, having made no measurements, that a motorist 50 feet east of the Missouri-Kan-

sas-Texas main line with cars 50 feet south of Hickory street on the drill track could see an approaching train on the Missouri-Kansas-Texas main line 150 feet south of the crossing; and a motorist just west of the drill track could see southwardly down the Missouri-Kansas-Texas main line track two blocks. He stated a block was approximately 350 feet long.

In holding that a motorist had not exercised "the care of an ordinarily prudent person" in somewhat similar circumstances, we said in Henderson v. St. Louis-San Francisco R. Co., 314 Mo. 414, 284 S.W. 788, 793: "There are numerous cases holding that it is negligence for a traveler, after waiting for a train to pass on the near track, to start across behind it without waiting until it had passed far enough to enable him to see a train approaching from an opposite direction on another track. [Citing cases.]"

In 1919 motorists were required to exercise only ordinary care. Laws 1917, p. 413, § 11. In an action by a motorist who was injured when an unattached engine struck his automobile at a grade intersection where his view in one direction was obstructed by trees, brush and weeds and he failed to observe its approach from the opposite direction until it was 45 to 60 feet away and he was practically on the track, Court en Banc said: "If objects obstruct his view, or noise interfere with his hearing, his conduct must meet these conditions before he has exercised ordinary care for his own protection under the circumstances surrounding him." State ex rel. Hines v. Bland, Mo., 237 S.W. 1018, 1019 [2], quashing (loc. cit. 1020) Sandry v. Hines, Mo.App., 226 S.W. 646, because of conflict with Kelsay v. Missouri Pacific Ry. Co., 129 Mo. 362, 377, 30 S.W. 339, 341, a case which has not been departed from by this court (see citations in cases infra). The Kelsay case states it is the duty of a traveler approaching a railroad crossing to use all reasonable precautions to ascertain the approach of trains and to avoid injury; and: "This rule imperatively re-

quires him to look carefully, in both directions, at a convenient distance from the crossing, before venturing upon it, if, by looking, a train could be seen. The duty will not be performed by attempting to look only from a point at which the view is obstructed. The duty is a continuing one until the crossing is reached. If there is a point between the obstruction and the track which gives opportunity to see, it is the duty of the traveler to look. He cannot close his eyes and thereby relieve himself of the consequences of his own neglect. Hayden v. Missouri, K & T. Railway Co. [124 Mo. 566], 28 S.W. 74."

■ Merl, operating his automobile, was required to exercise the highest degree of care for his own safety. § 304.010 RSMo 1949, V.A.M.S.; State ex rel. Kurn v. Hughes, 348 Mo. 177, 153 S.W.2d 46, 53 [8, 9]. We have said: "[T]he law is well established that a railroad track itself is a warning of danger, and that a highway traveler must exercise care commensurate with the circumstances—a motorist, the highest degree of care. If his view is obstructed, he must do whatever is necessary and possible to safeguard himself—by having his car under control, slowing up, stopping, listening, and continuing to look until he can see, even up to the crossing." Borrson v. Missouri-Kansas-Texas R. Co., 351 Mo. 229, 172 S.W.2d 835, 848 [11, 14]. See also Lohmann v. Wabash R. Co., 364 Mo. 910, 269 S.W.2d 885, 892; Scott v. Kurn, 343 Mo. 1210, 126 S.W.2d 185, 187; Rischeck v. Lowden, 347 Mo. 426, 147 S.W.2d 650, 652 [2, 3]; Stevens v. Thompson, Mo.App., 175 S.W.2d 166, 169 et seq.

■ Plaintiffs' evidence established the following measurements between the centers of the tracks involved along the center of Hickory street: The drill track was 8 feet west of the in- and outbound track, the Missouri Pacific main line track was 14 feet west of the drill track, and the Missouri-Kansas-Texas main line track was 14 feet west of the Missouri Pacific main line track. Under plaintiffs' evidence Merl, with cars 50 feet south of the crossing on the drill track could see 150 feet south of the crossing along the Missouri-Kansas-Texas main line track while 50 feet east of said track; that is, while 22 feet east of the drill track. Obviously, he could see a greater distance south as he proceeded westwardly on Hickory street, and, under plaintiffs' evidence, could see two blocks (approximately 700 feet) south along the Missouri-Kansas-Texas main line track when just across the drill track, or when approximately 17 feet 8 inches east of the Missouri-Kansas-Texas main line track. Under the authorities cited it was his duty then, with the switch engine making considerable noise according to plaintiffs' witnesses, to have had his automobile under control and to have looked and listened to discover the approaching Missouri-Kansas-Texas train, and if he did not look and listen, or if he did look and listen and did not heed what he should have seen or heard, he was negligent as a matter of law. As stated in State ex rel. Hines v. Bland, supra, 237 S.W., loc. cit. 1020, the plaintiff in the Hayden case had at least 15 feet clear space in which he might have seen the train, and in the Kelsay case, 25 feet. Plaintiffs say Merl could have seen the train when the trainmen could have seen him. This does not aid plaintiffs as the trainmen first saw the automobile coming out from behind the switch engine on the drill track. Plaintiffs' evidence is that from the time Merl started he did not stop until his automobile was struck by the Missouri-Kansas-Texas train. In these circumstances there is no presumption he exercised due care. Borrson v. Missouri-Kansas-Texas R. Co., 351 Mo. 229, 172 S.W.2d 835, 847 [10].

Plaintiffs' cases of McGraw v. Montgomery, 239 Mo.App. 239, 185 S.W.2d 309; Nicholas v. Chicago, B. & Q. R. Co., 239 Mo.App. 421, 188 S.W.2d 511; Albertson v. Wabash R. Co., 363 Mo. 696, 253 S.W.2d 184; and Doyel v. Thompson, 357 Mo. 963, 211 S.W.2d 704, differ on the facts.

 

from the instant case. The Albertson case was an action by a guest in an automobile. The Doyel case is sufficiently distinguished from the instant case in Threlkeld v. Wabash R. Co., Mo., 269 S.W.2d 893, 894.

The judgment of the trial court is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.